WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURRO-
GATE.—December, 1880.

### HARTWELL *v.* McMASTER.

*In the matter of the probate of the last will and testa-
ment of* HUGH S. DUNN, *deceased.*

The Surrogate is not required to pass on any requests to find upon
questions of fact or of law, except as provided in section 2545 of the Code
of Civil Procedure, upon the settlement of a case. Such requests may be
submitted at the close of the testimony and may be considered by the
Surrogate, but are neither required by statute, nor necessary to protect
the rights of a party.

Section 1023 of the Code of Civil Procedure does not apply to Surrogates'
Courts.

An imperfect or indistinct subscription of the testator's name may be
regarded as his mark, and thus constitute a compliance with the re-
quirements of the statute.

Mere eccentricity of the testator, and his disbelief in any specific religious
doctrines will not suffice to destroy his testamentary capacity.

APPLICATION for the probate of a will.

On September 25, 1880, the deceased executed the instrument propounded as his last will and testament, and died on October 1, following, at the age of about seventy-two years. He had no children or descendants, and his heirs-at-law were first and second cousins, and his next-of-kin first cousins. His real and personal property of which he died seized and possessed amounted to about $15,000. He had been engaged in the stationery

business in the city of New York, had taught school occasionally, preached, and had some knowledge of electricity and its application as a remedy for certain diseases. The chief objection alleged against the admission of the paper claimed to be a will, to probate, was that the testator lacked testamentary capacity, to sustain which, it was shown, amongst other things, that he did not believe in the doctrine of the "Real Presence," or transubstantiation, nor in the necessity of infant baptism as a saving ordinance. That he lived alone, and caused himself to be locked in during his last illness when his attendant left him; that he on one occasion disturbed a religious meeting by indecent and abusive remarks addressed to the minister; that he sought to attend a public school in the neighborhood as a pupil; that when upwards of sixty years of age he fell in love with a girl of the age of twelve years. Contestants' counsel submitted requests to find upon certain questions of fact, and rulings upon questions of law.

DENIS R. SHIEL *and* MARTIN J. KEOGH, *for proponent.*

STEVEN CHITTENDEN *and* THOMAS H. HARTWELL, *for contestants.*

THE SURROGATE.—This case having been closed, in so far as the testimony and oral arguments are concerned, permission was asked to submit briefs, which was accorded. These briefs have now been submitted, and there have been handed in, on the part of the contestants, twenty-nine requests to find on questions of fact and of law. It may be well here to determine what, under the Code of Civil Procedure, is the proper practice as to the mode and time of the submission of such re-

quests. Section 2545 provides that "an exception may be taken to a ruling by a Surrogate, upon the trial by him of an issue of fact, including a finding, or a refusal to find, upon a question of fact, in a case where such an exception may be taken to a ruling of the court upon a trial, without a jury, of an issue of fact, as prescribed in article 3 of title 1 of chapter 10 of this act. The provisions of that article, relating to the manner and effect of taking such an exception, and the settlement of a case, containing the exception, apply to such a trial before the Surrogate, for which purpose the decree is regarded as a judgment, and notice of an exception may be filed in the Surrogate's office. Upon such a trial, the Surrogate must file, in his office, his decision in writing, which must state, separately, the facts found and the conclusions of law. Either party may, upon the settlement of a case, request a finding upon any question of fact, or a ruling upon any question of law ; and an exception may be taken to such finding or ruling, or to a refusal to find or rule accordingly."

Nothing is here said, other than in the last provision, in regard to requests to find ; the first two relating solely to the taking of exceptions. The provisions of the article, title and chapter referred to (§ 992, &c.) forbid the taking of an exception to a ruling upon a question of fact ; but in this court, as is seen, it is permitted to request a finding upon any question of fact, or a ruling upon any question of law, on the settlement of a case, and to take exceptions to such findings and rulings, &c. It is true, that section 1023 provides for requests to find, &c., to be made to the court or referee, but no exception to the finding of facts is authorized or required. It

is in reference to this section that the provisions of section 993 apply. The phrase "where a request to find thereupon is seasonably made" relates to its having been "seasonably made," as provided in section 1023. I do not consider the latter section applicable to Surrogates' Courts; the only requests to find which they are bound to regard being contained in above section 2545. If the law were as it seems to be claimed to be by the submission of these requests to find, it could involve the possible absurdity of requiring this court to make these different findings; 1st, on the requests here submitted; 2d, on filing the decision; and 3d, on the settlement of a case. No doubt such requests may be submitted and considered, but it is not required by statute, nor necessary to protect the rights of a party. While the question is not free from difficulty, I confess my inability to make any other satisfactory solution of it. Perhaps it would have been well to provide that each party might submit to the court requests to find such facts in his favor, and such rulings of law as would logically follow, as should be contained in his decision to be filed, where no such requests were made. This would be an aid, rather than an annoyance to the court. In no case ought the court to be asked to find anything but *facts*, and such as are material to the issue, and not the evidence of those facts. Here the contestants, at this stage of the case, ask me to find the evidence of many facts, instead of the facts themselves. Entertaining these views, I must decline, at this time, the request of the contestants to find and rule upon the matters submitted by them, otherwise than as they may be covered by the decision which the statute requires me to file.

As to the merits of the controversy in regard to the will in question, I do not propose to enter largely into a discussion of the mode of its execution, of undue influence exercised in its procurement, or of the testamentary capacity of the testator. The principles of law to be applied to the facts of this case have been too thoroughly considered and settled to render such discussion, here, necessary or profitable. Suffice it to say that all the statutory requirements as to its execution seem to have been substantially complied with. He subscribed his name, however imperfectly; and as his mark alone would suffice, if all the letters necessary to the proper spelling of his name cannot be distinctly made out, what he did write may, at least, be regarded as his mark. I am not aware of any rule of law which prescribes for it any particular form or structure. It is, perhaps, unnecessary to add that it is well settled that a subscription by making a mark, and without any written name, is a compliance with the requirement of the statute. (Jackson *v.* Jackson, 39 *N. Y.*, 153.) I look in vain for evidence that any influence whatever, much less undue influence, was exercised over the testator, as to the provisions of the will. Mr. Shiel, the lawyer who prepared the will, very properly inquired of the deceased as to his relatives, with a view to direct his attention to those who might be regarded as the natural objects of his bounty, and seems to have conducted himself, throughout that transaction, in a creditable manner.

I can find nothing in the testimony which would justify a belief that the testator was insane, or otherwise lacked testamentary capacity. He seemed *to dislike his cousins, who were his nearest relatives, for various rea-*

sons, which were not based upon delusions. That he was somewhat eccentric sufficiently appears, but mere eccentricity is not enough to destroy testamentary capacity. His want of belief in the saving efficacy of infant baptism, and of the doctrine of the Real Presence, are utterly without significance on this point; nor do any of the other acts and sayings of his, which are urged as evidence of his insanity, possess much more importance. None of his relatives ever seem to have so much as conceived the idea, during his life, of having his property taken out of his hands. He appears, in so far as that is concerned, to have been rather a shrewd and prudent manager. Under all the circumstances, he had a right, and it was not unnatural for him, to select, as the recipient of his bounty, his countryman and friend of forty years, David McMaster. Their views were in accord upon religious matters, in which the deceased manifested much interest, their social relations were intimate, and the latter was his worthily trusted adviser upon all his matters of business.

An order must be entered, admitting the will to probate, with costs to the proponent, to be paid out of the fund.

Ordered accordingly.