MATTER OF THE SALE OF THE REAL ESTATE OF JOHN P.
DODGE, DECEASED.

CATHARINE E. DODGE AND ANOTHER, APPELLANTS, *v.*
JOSEPH T. STEVENS, RESPONDENT.

*Conversion of real estate into personal property — when not absolute but only partial — interest of one entitled to an estate in land on the remarriage of a widow — nature and quality of it — it cannot be sold in proceedings for the sale of the real estate of an infant — it is not real estate within the meaning of chapter 211 of 1873 — power of a surrogate to allow costs to a special guardian — Code of Civil Procedure, sec. 2561.*

Where it appears from the terms and provisions of a will that the testator intended that his debts should be paid from his personal property, and that his real estate should be charged with only the amount of the incumbrances existing theron, a clause conferring upon his executors authority to sell and dispose of his real estate, at such time or times and in such manner as they shall deem advantageous, and directing them to dispose of the proceeds as thereafter provided, does not convert the real estate into personal property for all purposes, but only for the purpose of division, and the proceeds arising therefrom should not be treated as personal property liable for the payment of the testator's debts.

A testator who died in 1869, devised and bequeathed to his wife all his personal property remaining after the payment of his debts, and also the use, benefit and occupation of a farm, for the time and so long as she should remain his widow, and in case she should not marry again, then he devised and bequeathed said farm to her in fee. By a subsequent clause, it was provided that in case his wife should marry after his decease, he gave, devised and bequeathed the said farm to his daughter Catharine E. Dodge in fee.

On April 19, 1870, one Thompson, as special guardian, pursuant to an order of the Supreme Court, conveyed the interest of the infant Catharine in the said farm to one Coulter, by a conveyance which was duly recorded, and on the same day Dora A. Dodge, the widow, conveyed her estate and interest therein to the same person. On February 3, 1879, the said premises were bought by the special guardian, individually, at a sale had under the foreclosure of a mortgage given to him as special guardian to secure a portion of the purchase-money. February 6, 1879, Dora, the widow, remarried.

On December 4, 1882, proceedings were instituted in a Surrogate's Court, by a creditor of the deceased, to have the said farm sold to pay the debts of the deceased testator.

*Held,* that the statute of limitations was no bar to the claim of the creditor or to his instituting the proceedings.

That the said farm was, at the time the proceedings were instituted, vested in the testator's daughter, Catharine E. Dodge.

That the sale by the court of the possible interest of the daughter in the farm, during the lifetime and before the remarriage of her mother, was invalid because both unauthorized and forbidden by the statute, which does not authorize the sale of such a possibility but of lands whereof the infant is seized. (LEARNED, P. J., dissenting.)

That chapter 211 of 1873, forbidding the sale of the real estate of a deceased person for the payment of his debts, when it has passed from the heir or devisee by conveyance or otherwise to a purchaser in good faith, unless application for such sale be made to the surrogate within three years after the granting of letters testamentary, did not affect this case. (LEARNED, P. J., dissenting.)

Section 2561 of the Code limits to seventy dollars, the discretion conferred upon a surrogate in determining the amount of costs, in addition to disbursements, which should be allowed to the special guardian of an infant devisee.

APPEAL from a decree of the Surrogate's Court of Sullivan county directing certain real estate to be sold to pay a claim of a creditor of the estate of John P. Dodge, deceased.

This proceeding was commenced on the 4th of December, 1882, by the filing of a petition by the respondent Joseph T. Stevens for a disposition of the real estate of the decedent for the payment of his debts.

The petitioner's claim is upon a bond under seal, executed by the decedent May 1, 1868. The obligor died in April, 1869, leaving a will, also a widow and five children. Letters testamentary were granted to John A. Thompson May 10, 1869, and he is still acting as executor. The deceased left some personal property which was inventoried and appraised at the sum of $3,992.77, and some additional claims amounting nominally to the sum of $2,356, which were included in the inventory as of no value. He also left five parcels of real estate, viz.: First. Property situated at McCoomb's dam, covered by mortgages amounting to $25,000. Second. Property at Spuyten Duyvel, known as the "Spuyten Duyvel property." This was sold by the executor under a power in the will for $7,500. Third. A small lot at Prospect Hill, in Westchester county, of no practical value. This lot was subsequently sold for taxes and is now held under a tax title. Fourth. A farm in Sullivan county devised to a son Michael D. Dodge. This farm was sold by the devisee, and is now held by a *bona fide* purchaser. Fifth. Another farm in Sullivan county devised to the widow, and in the event of her remarriage a contingent remainder over to a daughter, Catharine E. Dodge. The widow remarried February 6, 1879, and it is

claimed that this farm is now owned by the daughter as a devisee. This is the property directed to be sold by the decree appealed from. The bond now held by the petitioner was, at the testator's death, secured by a second mortgage on the property at McCoomb's dam, the parcel first above mentioned. That property was sold under a foreclosure of the prior mortgage, and a surplus arising from the sale of $560 was applied on this bond. No accounting was ever had by the executor.

The surrogate found, among other facts, that the real estate known as the Dodge farm, situated in the town of Tompkins, Sullivan county, N. Y., was devised to the widow in fee, if she remained unmarried; should she marry again then the daughter, Catharine E. Dodge, was to have the farm. That on or about April 19, 1870, pursuant to an order of the Supreme Court in proceedings to sell the interest of Catharine E. Dodge in the Dodge farm, John A. Thompson, as special guardian for said Catharine E. Dodge, executed and delivered a conveyance of the interest of Catharine E. Dodge to one Julia A. Coulter, which conveyance was duly recorded in the Sullivan county clerk's office. That on the same date Dora A., the widow of said John P. Dodge, deceased, executed and delivered to said Julia A. Coulter a conveyance of her estate and interest in the Dodge farm. That the consideration of the said conveyance was $7,300, of which the said Julia A. Coulter paid $2,300 in cash, and the balance of $5,000 was secured by the bond and mortgage on the said Dodge farm to said John A. Thompson as such special guardian. That thereafter, and in the year 1878, said $5,000 mortgage was foreclosed by said Thompson as such special guardian, and a decree of foreclosure and sale entered therein about October 29, 1878. That pursuant to said decree of foreclosure and sale the said Dodge farm was sold by William B. Niven, Esq., a referee, on or about February 3, 1879, to John A. Thompson, individually, for the bid of $5,000, and a conveyance was executed by said referee to said Thompson and recorded. That on the 6th day of February, 1879, Dora A. Dodge, the widow of John P. Dodge, remarried. That the personal property of the deceased was wholly insufficient for the payment of his just debts and funeral expenses. That the debt of the claimant for the payment of which a decree herein is sought was a debt of the

decedent and is due and owing the petitioner herein. That the real property in regard to which a decree is sought was not effectually devised or expressly charged with the payment of debts or funeral expenses and is not subject to a valid power of sale for the payment thereof. And as conclusions of law he found that there is justly due and owing the petitioner herein upon the bond executed by John P. Dodge, as aforesaid, the sum of $3,555.28. That the real estate known as the Dodge farm, and herein sought to be charged with the debts of the decedent, is now held by Catharine E. Dodge, as devisee under the will of said John P. Dodge, deceased, and not as purchaser under the proceeding to foreclose the mortgage executed by Julia A. Coulter to John A. Thompson, as special guardian of the said Catharine E. Dodge, and that Julia A. Coulter acquired no title to said premises under the proceedings to sell the real estate of Catharine E. Dodge. And that the title of the said Julia A. Coulter acquired from the purchase from the widow was a conditional fee and subsequently defeated by the remarriage of the widow in February 1, 1879. That under the provisions of the will of John P. Dodge his personal property was not chargeable with the payment of the petitioner's debts, but that the same was specifically charged upon the McComb dam property. That the testator, by his will, does not convert any part of the real property into personal assets for the payment of debts except the direction as to the McComb's dam property. That the claim of the petitioner is not barred by the statute of limitations, and that his right to maintain these proceedings is not barred, the same having been commenced within the time permitted by law. That there has been no accounting by John A. Thompson, as executor of the will of John P. Dodge, deceased, as is required in chapter 6, part 2, title 3 of the Revised Statutes. That the petitioner should have a decree directing the disposition of the real property of the decedent for the payment of his debts, and that the real estate known as the Dodge farm should be disposed of to pay the claim of the petitioner, together with the costs of these proceedings.

*George W. Weiant*, for the appellant.

*T. F. Bush*, for the respondent.

LANDON, J.:

That the statute of limitations was no bar to the claim of the creditor, or to his instituting this proceeding for the sale of the real estate of the deceased for the payment of this debt, was necessarily involved in and disposed of upon the former appeal.

The finding of the surrogate that the personal property of the deceased was wholly insufficient to pay his just debts and funeral expenses is justified and required by the evidence. The will of the testator did not authorize any of his real estate to be applied in payment of his debts, except mortgage debts, and in that case the mortgaged parcel was to be applied in payment of the mortgage debt. The will, it is true, did authorize the executor to sell certain parcels of real estate, not, however, for the payment of debts, but that the proceeds might be divided among certain beneficiaries. The will did not contain any devise of this real estate to the executor, but with respect to it declares : " I hereby authorize and empower my executor to sell and dispose of it, at such time or times and in such manner as he shall deem advantageous," and then follow elaborate provisions for the disposition of the proceeds. He then authorized his executor to lease said real estate and collect the rents " until such time or times as he shall deem it advisable to sell and dispose of the same," and he directed the disposition of the rents. The will gave to the testator's widow his personal property, after the payment of his debts except his mortgage debts. The executor did sell a parcel of this land for $7,500. If by the will this land was converted into personal property " out and out," for all the purposes of administration, then the executor should account for it in this proceeding. The surrogate held that the testator, by his will, did not convert any part of this real property into personal property for the payment of debts, and upon this finding rested his further finding that the personal property of the testator was insufficient for the payment of debts.

We think the testator intended that for the purpose of the division of this real estate among his beneficiaries in the manner indicated by him, it should be converted into money. It would be difficult to carry out the scheme of his will otherwise. He does not devise this real estate to any one, but does make disposition first " of $1,000 of the proceeds thereof," and then of " the rest and residue

of the proceeds of my real estate and lands herein above *directed* to be sold," thus indicating that the authority he gave to his executor to sell was equivalent to a direction to sell. We think there was an equitable conversion. (*Power* v. *Cassidy*, 79 N. Y., 602; *Lent* v. *Howard*, 89 id., 169; *Fisher* v. *Banta*, 66 id., 468; *Dodge* v. *Pond*, 23 id., 69; *Chamberlain* v. *Chamberlain*, 43 id., 424.)

But we do not think it was a conversion out and out for all purposes of administration, so as to be made applicable as personal property to the payment of the testator's debts. . In *Fisher* v. *Banta*, the court say : " The conversion may be entire, embracing the whole estate, or partial, extending only so far as is necessary to satisfy special purposes indicated in the will. The matter to be considered is the intention of the testator. The conversion, whether absolute to all intents or partial only, is the one or the other, because the purpose of the will, *i. e.* the intention of the testator, was that the conversion should be general or partial for all purposes, or for limited purposes only."

It is apparent from the will that the testator supposed he had personal property enough to pay his debts, except his mortgage debts, and that as to the latter the mortgaged land was sufficient or more than sufficient to satisfy them. It probably never occurred to him that any of his other real estate would need to be applied to the payment of his debts, and, therefore, when he directed that certain of his real estate should be converted into money, he thought only of the money as a convenient means of division and form of gift. The testator manifestly did not intend to give to this real estate the quality of personal property for all intents and purposes, but only for the purposes of division, and as his intent, as expressed by the will, would govern, this real estate did not become personal property for the payment of his debts. (Story's Eq , § 793, note 2.)

It was proper for the executor to present his account in writing, to the end that the same might be made the basis of common law-proofs and a common-law examination. The facts which the creditor had to establish were that " all the personal property of the decedent, which could have been applied to payment of the decedent's debts and funeral expenses, has been so applied, * * * and that it is insufficient for the payment of the same as established by the decree." (Code, § 2759.) Clearly it is the duty of an

executor to keep an account. That he has done so is proved by his production of it. But the truth of that account is not thereby proved. The executor is called as a witness and subjected to a common-law examination, and it is upon this common-law evidence that the surrogate determines the facts.

The real estate in question, known as the " Dodge farm," is vested in the testator's devisee, Catharine E. Dodge, by virtue of the will. We think this was the clear intimation of the Court of Appeals when her title was there established. (*Dodge* v. *Stevens,* 94 N. Y., 209.) But, independently of that intimation, the following considerations lead to the same conclusion: A fee may be limited upon a fee upon a contingency. (1 R. S., 724, § 24.) The second fee is a future estate. (Id., 723, § 10.) Future estates are either vested or contingent. (Id., § 13.) These words are used in opposition to each other. An estate cannot be both vested and contingent. It is contingent when the event upon which it is limited to take effect remains uncertain. (Sec. 13.)

In this case the remarriage of the widow was an uncertain event, and, therefore, the creation of this future estate was only inchoate, and could not ripen into an actual creation thereof until the uncertain event transpired.

The common law was to the same effect. Thus, in *Boraston's case* (3 Coke's Rep., 20): " When a remainder is limited to take effect on the doing of an act, which act will be the determination of the particular estate, yet if the act depends on a casualty and mere uncertainty whether it will ever happen or not; there, also, the remainder doth depend in contingency and shall not presently vest." This devise to the daughter, although falling within the definition of " a fee limited upon a fee upon a contingency," may also fall within the definition of section 27, which provides that a remainder may be limited on a contingency which, in case it should happen, will operate to abridge or determine the precedent estate. " Every such remainder," the section provides, " shall be construed a conditional limitation, and shall have the same effect as such limitation would have at law." The revisers in their notes state the effect of a conditional limitation to be, that when the condition is broken or performed the remainder commences in possession, and the person entitled under it has an immediate right to the estate. (4 Kent,

250.) But how was it in the meantime? At common law this devise to the daughter would have been an executory devise, and by force of the term executory the implication is that no title vests until the devise is executed by the happening of the condition. The distinctions necessary to be noted are well pointed out in *Proprietors, etc.,* v. *Grant* (3 Gray, 142). Speaking of the conditional limitation in an executory devise, it is remarked : "The limitation over being executory and depending on a condition or an event, which may never happen, passes no vested interest or estate. It is impossible to ascertain in whom the ultimate right to the estate may vest, or whether it will ever vest at all, and, therefore, no conveyance or mode of alienation can pass an absolute title." (Page 148.) If the infant were competent to contract she could release to her mother, the devisee of the first fee, the right to her possibility. (*Miller* v. *Emans,* 19 N. Y., 384.) This for the reason that while public policy forbids the sale of a mere contingency, it favors the merger of the whole title in the present owner in possession. This remainder, the statute says, shall be construed as a "conditional limitation," not an absolute limitation. It can only pass when the condition happens. What title has the remainderman? The simple right to await the happening of the condition and then to avail himself of it. In *Kenyon* v. *See* (94 N. Y., 563) it was held that before performance of the condition nothing vested, but that it was possible that the conditional legatee, by his assignment of his interest to the first taker, would be barred as by estoppel. The point was not decided. But an infant cannot be estopped by matters *in pais.*

The sale, by the court, of this possibility was invalid because both unauthorized and forbidden by the statute. The statute does not authorize the sale of such a possibility, but of lands whereof the infant is seized. (2 R. S., 194, § 170.) To sell the possibility before the devise took effect would be to defeat the devise itself, and that the statute forbids. (Id., 195, § 176.)

It is suggested that the devise to Catharine created an expectant estate, and expectant estates are alienable. (1 R. S., 725, § 35.) But they are not alienable by the court unless the infant is seized of them either in fact or in law. There was no seizin in fact, and there could be none in law until the infant's title had accrued. It

may be doubted whether the devise to the daughter was of an expectant estate under the definition given by the statute. This definition is of estates "as respects the time of their enjoyment." (Id., 722, § 7.) Here the future contingent event had respect to the going into effect of the devise itself. The gift was postponed, not the time of its enjoyment, for the right to enjoy was complete *eo instanti* the gift was complete.

It may be asked why is not this a vested interest under the statute as expounded in *Moore* v. *Littel* (40 N. Y., 66). Here, as there, you can point to the person who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate. The answer is that there the remainder was absolutely given to somebody, here it was not. A remainder existed and if you could point to its next owner upon the present determination of the present title the next owner is presently vested with his expectant title. Here no subsequent title is created, and until it shall be, it cannot exist. Time is annexed to the substance of the gift and the vesting is postponed. (*Delaney* v. *McCormack*, 88 N. Y., 183.)

It follows that chapter 211, Laws 1873, forbidding the sale of the real estate of the deceased for the payment of his debts where it has passed out of the heir or devisee, by conveyance or otherwise, to a purchaser in good faith, unless application for such sale be made to the surrogate within three years after granting of letters testamentary, does not affect this case.

We do not think that the surrogate was required to pass upon any requests to find, except upon the settlement of the case under section 2545 of the Code. Section 1023 does not apply. (*Hartwell* v. *McMaster*, 4 Redf., 389.)

The surrogate had a discretion limited by law, as to the amount of costs he should allow the special guardian of the infant devisee. Section 2561 of the Code fixes the limit in cases of contest to seventy dollars in addition to the disbursements. We are cited to cases to the effect that this limit does not apply to special guardians in Surrogates' Courts. (*Matter of Budlong*, 33 Hun, 235; *McCue* v. *O'Hara*, 5 Redf., 336.)

The case in Hun was decided, however, upon other grounds. Grant that independently of the statute the court had the power

to allow to a special guardian reasonable compensation, that compensation should be for costs and expenses. Why else should he be paid anything from the fund? Clearly it was competent to regulate such costs and expenses by statute. Code (§ 474) speaks of this allowance as "costs and expenses," and section 2561 fixes the limit to the "costs," which, in addition to the disbursements, the surrogate may, "as he deems reasonable," allow. It may be conceded that cases of hardship to the attorney may arise under this construction, but if it is not to obtain, cases of hardship to the infant will also arise. Nothing is more difficult justly to administer than discretionary allowances, and where the statute has set a limit it should be upheld not only as a relief to the courts but as a protection to clients.

The decree of the surrogate should be affirmed, with costs, including those of the special guardian, to be paid out of the fund.

BOOKES, J., concurred.

LEARNED, P. J. (dissenting):

The will gave the land to the widow in fee, and further declared that if she should marry, then the land should go to the daughter, Catharine E., in fee.

At common law this devise to the daughter would have been an executory devise. It is now a future estate (1 R. S., m. p. 723, § 10); that is, it is limited to commence in possession at a future day, on the determination of a precedent estate created at the same time. A fee may now be limited on a fee (see p. 724, § 24), so that we have no longer to look to the law of executory devises, but can base the discussion on the statute.

A future estate belongs to one of the classes of expectant estates (m. p. 723, § 9). It is, therefore, descendible, devisable and alienable the same as estates in possession (m. p. 725, § 35). This future estate is contingent (m. p. 723, § 13). But it is declared to be an estate by these sections, and is not a mere possibility like the probability of an heir's inheriting from his ancestor. Even before the Revised Statutes, a contingent estate like this was assignable. (*Miller* v. *Emans*, 19 N. Y., 384.) And certainly so since the Revised Statutes. (*Moore* v. *Littel*, 41 N. Y., 66; *Van Ness* v. *Day*, 7 Alb. L. J., 172.) These were cases of conveyances, *not*

to the party in possession. They were, therefore, upheld not on the ground of merger, but on the ground of the general alienability of such an estate.

Then the question arises, can such an estate belonging to an infant be sold under the statute? The statute (2 R. S., m. p. 194, § 100 [170]) says: "Any infant seized of any real estate or entitled to any term for years," etc. Section 105 (175, m. p. 195) says: "Any part of the real estate of such infant." The question is, what does the word "seized" here mean? The proper meaning of seizin is possession, as of freehold. (Digby Real Prop., 40 *n*.) And livery of seizin, that is delivery of possession, went with a feoffment. This is abolished. (1 R. S., m. p. 738, § 156 [136].) Nor could there be then a livery of seizin in a case of a devise. (1 Wash. Real Prop., m. p. 34, § 73.) Whatever may have been the early doctrine, it has long been the language of the law that a reversioner or remainderman in fee was *seized* of his estate. The sale of this infant's real estate was not contrary to the provisions of the will. (2 R. S., m. p. 195, § 106 [176].) Because we have just seen that the daughter, Catharine E., when of age, could convey this expectant estate. Therefore, she was not forbidden to convey by the provisions of the will.

If the provisions of the will did not forbid her to convey, when she should be of age, clearly the court did not act against those provisions by authorizing a conveyance when she was a minor. Nothing is said in the will about her minority. The case of *Rogers* v. *Dill* (6 Hill, 415) has nothing applicable to this case.

In *Baker* v. *Lorillard* (4 N. Y., 257) there was a devise, made before the Revised Statutes, of an estate for life to D. P. C., remainder in fee to his children; executory limitation to Thomas, if D. P. C. left no children at his death, and there was a power of appointment by will in D. P. C. In 1825 D. P. C. had five children, minors, and the usual order of sale was made, which by its terms was to cut off after-born children. Subsequently three more were born. The court held that after-born children were not affected by the sale. Some of the judges would express no opinion whether the sale bound *all* or only those living. The majority seem to have thought that it bound those who were living (see p. 270), notwithstanding the executory limitation. *Durando* v.

*Durando* (23 N. Y., 331) only holds that a widow is not dowable when the husband had only a vested remainder in fee.

In *Jenkins* v. *Fahey* (73 N. Y., 355, and see *Taggart* v. *Murray*, 53 N. Y., 233) a will gave a life estate to Cornelia, with remainder to her issue living at her death, with power to her in default of issue to appoint the fee by will. It was held that, prior to the death of Cornelia, the court might order the sale of the interests of the minor children then living. Yet their interest were subject to two contingencies: First, that there might be after-born children; second, that those whose interests were sold might not survive Cornelia. To the same effect is *Haight* v. *Haight* (14 Hun, 176). If any argument may be drawn from the present law there can be no doubt that the interests of the infant under this will could be sold (Code, § 2348), and that section does not purport to make any change.

It has sometimes been urged that a power to sell expectant estates would lead to a sacrifice of the interests of minors. But the court has a discretion. It need not order a sale if it sees that a sale is unwise. In this very case the purchaser would probably not have taken a title from the widow alone, or the title of the children alone. But by obtaining a deed from the widow and one from the special guardian, he received (as he thought) a title free from all contingencies, and, therefore, paid (as we may suppose) a fair price. Thus the property was made available both for the widow and the minor. If the view taken by the respondents be correct nothing could be done, during the minority of the infant, to protect her against the loss which delapidation was bringing on the property. I am, therefore, of the opinion that the word "seized" in the section above quoted is not used in any narrow or technical sense; that it is explained by the words "any part of the real estate of such infant" in a following section. And that it includes any estate which the infant would be able to convey, but for his defect of age. I see no reason why an exception should have been intended by the revisers in respect to infants when all estates were made alienable without restriction.

If we turn back to section 97 (167, p. 194) we find that an infant trustee for others may be compelled to convey, etc., as the court may direct. The language is "seized or possessed." Is there any doubt

that this section would include a contingent estate thus held in trust? I have found no decision, and none has been cited, holding the contrary to the views thus stated. There is another view. Executed contracts such as deeds will generally be deemed ratified unless disaffirmed by an infant before he arrives at age or within a reasonable time thereafter. No person but the infant can set up the defense of infancy. (*Beardsley* v. *Hotchkiss*, 96 N. Y., 201 at 211.) Catharine E. Dodge may then ratify, or fail to disaffirm, the conveyance made in her name by the special guardian, if indeed the action of *Dodge* v. *Stevens* (94 N. Y., 209) was not of itself a ratification. What right has Stevens, the respondent here, to set up the invalidity of legal proceedings to which the parties interested make no objection?

The object of the statute (chap. 211, Laws of 1873) is that when three years shall have expired after granting letters, and no application for sale of lands shall have been made, a person may purchase in safety from the heirs or devisee. Here Mrs. Coulter bought in good faith. The devisees conveyed; one of them through the action of the court. The consideration was paid or secured. If there were any defect the grantor ought in good conscience to ratify. And this creditor, who has waited from the probate of the will in 1869 down to 1882, should not be allowed to assert this defect.

Decree of surrogate affirmed, with costs; costs of special guardian to be paid from fund.