1. *Appeal. Surrogate.*—An exception to the surrogate's decree, or to any
portion of it, is unavailing.
2. *Same.*—The exception must be taken to the decision, findings and re-
fusals to find.
3. *Same.* -The appellant must procure a decision in writing, in accordance
with section 2545 of the Code, such as will present, through appro-
priate exceptions, the questions he desires to raise on appeal.

Scott G. Falls, one of the heirs at law and a legatee
named in the will of his father, Richard Falls, appeals from a
decree and judgment of the surrogate's court of the county
of Otsego, entered on the 13th of September, 1888; and in
his notice of appeal he states that he intends to bring up for
review that portion of said decree or judgment which pur-
ports to construe the will of Richard Falls, deceased, and
he specifies that portion of the decree which adjudges " that
the said Daniel Falls, as such administrator with the will
annexed, out of the balance in his hands for distribution pay
over to himself or retain in his hands as trustee under the
last will and testament of Richard Falls, deceased, and for the
use and benefit of Scott G. Falls, as by such will directed,
the sum of $3,135.84."

The appeal book contains a certificate dated March
10th, 1888, signed by Mary A. Shanessy, Nancy E. Falls,
James A. Falls and Scott G. Falls, that they have ex-
amined the account of Daniel Falls as administrator, and
" find his account (which is hereto annexed) in all respects

correct; and we do hereby consent that the surrogate of the county of Otsego may order and decree that said account be judicially settled, and the said administrator be discharged from his said trust; and that such other or further order or decree be made in the premises as shall be just and proper without notice to us, we hereby waiving the issuing of, and service upon us of, a citation for a final accounting before the said surrogate." That certificate was acknowledged on the 21st of March, 1888. It appears that Richard Falls died April 4th, 1881, leaving a will which was admitted to probate June 22d, 1881, and that letters of administration with the will annexed were issued to Daniel Falls. The appeal book contains an account of Daniel Falls, as administrator, with the estate of Richard Falls, deceased, wherein he charges himself the amount of the inventory on file, $13,472.70, and certain other sums specified in the account; and he credits himself with certain sums paid out mentioned in schedules annexed to his account, and his account is verified with the usual oath of an administrator, on the 13th day of September, 1888. The appeal book shows that on the 26th of July, 1888, the administrator, in person, and by counsel, appeared before the surrogate, and that Scott G. Falls appeared by counsel, and read in evidence a consent signed by Mary A. Shanessy, Nancy A. Falls and James A. Falls; it was admitted that Scott G. Falls, Mary A. Shanessy, Nancy A. Falls and James A. Falls are the only children of Richard Falls, deceased, and that they are all of full age and residents of the county of Otsego.

An instrument bearing date the 28th day of May, 1888, executed by Mary A. Shanessy, Nancy E. Falls and James A. Falls, was read in evidence, consenting and requesting the administrator "to pay over to Scott G. Falls * * * all moneys and property in the hands of said Daniel Falls, as trustee, administrator or otherwise, which he may have received in trust for the said Scott G. Falls, under any or either of the provisions of said last will and testament, and

which were given in trust to said Scott G. Falls by the terms of said last will and testament, hereby desiring and asking that said property and moneys, the use of which was, or might be, intended for the said Scott G. Falls under and by virtue of the said will, may become his absolutely and without hindrance or any trust attached thereto ; * * * that the said surrogate do make and enter the necessary and proper order releasing and discharging the said Daniel Falls as administrator aforesaid from his trusteeship so far as it may relate or pertain to the matter of said Scott G. Falls, and also releasing said administrator and his bondsmen from any further liability on account of the legacy or legacies bequeathed in trust or otherwise to and for the said Scott G. Falls, by virtue of the last will and testament aforesaid. And we do hereby severally and collectively release and discharge the said Daniel Falls as such administrator or otherwise from any and all claims and liability to us or either of us, or which we may or can have or pretend to have by reason of his so paying over and delivering to said Scott G. Falls the property and moneys aforesaid." The instrument also contained an indemnity of Daniel Falls as administrator against all liability, cost and charges " that may grow or arise out of and from the act of said administrator paying and delivering to said Scott G. Falls the money and property aforesaid." That instrument was acknowledged on the 1st day of June, 1888. The will of Richard Falls was read in evidence ; it does not appear that any other evidence was taken before the surrogate. He thereupon, on the 13th day of September, entered a decree which contains a summary of the accounts of the administrator, which decree contains a statement that the surrogate " finds the state and condition of the said accounts to be as stated and set forth in the summary statement thereof made by the said surrogate as finally settled and adjusted by him, which is above and herewith recorded." The decree then proceeds to state " that the said accounts be and the same hereby are finally and judicially

settled and allowed as so filed and adjusted as aforesaid." It is "further ordered, adjudged and decreed that the said Daniel Falls, as such administrator, with will annexed, out of the balance in his hands for distribution, pay over to himself or retain in his hands as trustee under the last will and testament of Richard Falls, deceased, and for the use and benefit of Scott G. Falls, as by such will directed, the sum of $3,135.84." It is further ordered that "upon filing with the said surrogate his vouchers and satisfactory evidence, showing that he has paid the several sums as above directed, and has otherwise fully complied with the several provisions of this decree, he be finally discharged from his said trust and that a decree be entered accordingly."

Upon the 8th day of October a supplementary decree was entered reciting the filing of certain vouchers, and thereupon it was "ordered that he be, and he is hereby discharged from his trust as such administrator, with the will annexed." On the 1st day of August, 1889, Scott G. Falls filed an exception to a portion of the decree entered on the 13th of September, 1888, being that portion which directed Daniel Falls, as administrator, with the will annexed, "out of the balance in his hands for distribution, pay over to himself, or retain in his hands as trustee under the last will and testament of Richard Falls, deceased, and for the use and benefit of Scott G. Falls, as by such will directed, the sum of $3,135.84 ; " and it was also stated in the exception that "the said Scott G. Falls excepts to each and every part of such decree as herein set out." The notice of appeal is set out, and the surrogate, on the 2d of September, 1889, executed a certificate, which is found at the close of the appeal papers, and it contains the following language : "The foregoing case contains all the evidence and all the proceedings given and had in the above entitled proceedings before me as surrogate of Otsego county, together with copies of all papers used in said proceeding. And it appearing to me that a proper presentation of this case for review so requires, I

hereby direct that the evidence and exhibits be stated in full so far as is done in the foregoing. And the parties, by their respective counsel, have voluntarily appeared before me for the settlement of said case, and notice of settlement being waived by the attorney for the respondent, the said case is hereby signed by me, and ordered to be filed."

*A. P. Barber*, for appellant.

*Melville Keyes*, for respondent.

HARDIN, P. J.—Section 2545 of the Code of Civil Procedure provides that " An exception may be taken to a ruling by a surrogate upon the trial by him of an issue of fact, including a finding, or a refusal to find, upon a question of fact, in a case where such an exception may be taken to the ruling of a court upon a trial without a jury of an issue of fact, as prescribed in article 3, of title 1, of chapter 10 of this act. * * * Upon such a trial the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law. Either party may, upon the settlement of the case, request a finding upon any question of fact, or a ruling upon any question of law, and an exception may be taken to such a finding or ruling, or to a refusal to find or rule accordingly. An appeal from a decree or an order of the surrogate's court brings up for review by each court to which the appeal is carried each decision to which an exception is duly taken by the appellant as prescribed in this section."

In Hartwell *v.* McMaster, 4 Redf. 389, Surrogate Coffin recognizes the duty of a surrogate to observe the provisions of § 2545 in respect to a separate statement of facts found, and the conclusions of law reached thereon.

In Angevine *v.* Jackson, 103 N. Y. 471, it appears that certain findings of fact were made by the surrogate, and conclusions of law thereon, and after referring thereto, FINCH,

34

J., said : " No exception was taken to any of these findings. The case recites an exception to the surrogate's degree, and each and every part of it. We have repeatedly pointed out the uselessness of such an exception. Ward *v.* Craig, 87 N. Y. 550; Hepburn *v.* Montgomery, 97 Id. 617. It indicates no specific error; it directs attention to no finding, and leaves court and counsel in the dark as to the precise cause of complaint. The case further shows a series of findings which the surrogate was requested to make, and which requests were refused. There was no exception to the refusal.

" The contestants appealed, and upon this case, which contained no exception raising any question of fact or law, and in which no errors in the admission or rejection of evidence are even claimed to exist, the general term reversed the decree of the surrogate and ordered issues to be tried by a jury, entirely disregarding the provisions of the Code.

" Those provisions point out the practice to be followed with care and precision. Section 2545. The surrogate is required to file in his office his decision, stating separately the facts found and the conclusions of law. Either party may except to the findings of fact or of law, and upon the settlement of the case may request findings, and take exceptions to a refusal, and the appeal brings up for review in the appellate court any question of fact or law thus raised by exceptions taken. The purpose was to assimilate the practice upon appeals from a surrogate's decree in the prescribed cases to that which regulated appeals from a judgment rendered by a court or a referee, and to substitute a system which would point out specific errors and evolve the exact questions intended to be reviewed. Nothing of this kind was before the general term, and without some exception to some ruling or determination, that tribunal was powerless to reverse."

In Hewlett *v.* Elmer, 103 N. Y. 157, the practice upon the trial by a surrogate's court is considered, and it is stated

that by § 2545 " the practice upon a trial by a surrogate's court of a question of fact, and the preparation of papers on which an appeal should be heard, are assimilated to the proceedings on and after trial of an action by the court." The court of appeals again, in Matter of Hood, 104 N. Y. 103, referred to the practice prescribed by § 2545 of the Code of Civil Procedure, and said, viz.: " It is the duty of the party appealing to procure to be made such findings or refusals as will present, through appropriate exceptions, the question he desires to argue; if he omits to do this, no question is presented for review." At page 106 FINCH, J., says: " If he suffers this necessary step to be omitted he will find himself without the means of reviewing the rulings of which he complains.

Having found the appellant's practice irregular, we are constrained to allow him an opportunity to apply to the surrogate for a " decision in writing which must state separately the facts found and conclusions of law," in accordance with the requirements of § 2545 of the Code of Civil Procedure. We think the formula for disposition of this case should be the same as that which we adopted in Dwight v. Elmira, Northern & Cortland Railroad Company, decided at this term.

Case sent back for such action and proceeding as counsel may deem advisable.

MERWIN, J., concurs; MARTIN, J., not voting.