now object that the order made by the referee for such accounting was irregular, or that it had not all the force of an order made by the court. While the burden was thrown upon the defendants to make the account, in a proper sense, still, when it was made, the burden shifted, and fell upon the plaintiff to attack that account, and remained with him to the end to establish the cause of action set forth in his complaint. The referee was therefore right in his ruling upon this subject.

The appellant concedes that the debts of the old company were the amount stated in the inventory, of nearly $400,000. There seems to be abundant evidence to sustain the conclusions of the referee that the value of the assets of the old firm was about $131,000. This large difference against the old firm, of over $250,000, there seems to be but little question, was made up out of the private means of the survivors. This bare statement would seem to put at rest any claim that Joseph N. Tift, at the time of his death, owned a farthing's interest in the property of the old firm. Charging him with this large deficit, it is not apparent from the evidence in this case how it was overcome by the subsequent management of the property of the old firm by the new so as to leave anything for the plaintiff. It is true that while the old firm might in fact have been insolvent at the time of the death of Joseph, if there were subsisting contracts, or property out of which might spring in the future, if judiciously managed, profits that would wipe out the liabilities of the old concern, and leave a balance, the plaintiff might share in that, but there is nothing in this case to justify such hopeful conclusions.

Certain exceptions were taken by the plaintiff to the admission or rejection of evidence upon the trial. We do not deem it necessary to consider them here, because if even they embraced the errors alleged by the plaintiff, they could not have possibly affected the result, or averted the inevitable conclusions that the referee reached, and which we have reached from the papers before us,—that at the time of the death of Joseph the old firm was hopelessly insolvent, and there was nothing for the survivors of the firm to build upon, out of which to work any benefit to the plaintiff.

The judgment should therefore be affirmed, but, as it was proper for the plaintiff to bring this action and obtain the accounting, no costs should be imposed upon the plaintiff, as administrator, upon this appeal. All concur.

---

### In re WINSLOW'S ESTATE.

#### (Surrogate's Court, Oneida County. April, 1895.)

PROBATE PRACTICE—DEATH OF SURROGATE.

  After a matter pending before a surrogate's court had been submitted, but before decision, the surrogate died. The parties then stipulated that a reargument should take place on the evidence before his successor. After the successor of the deceased surrogate had filed his opinion, but before he

had filed his written decision, his term of office expired. *Held*, that the proper practice was for the next succeeding surrogate to take up the proceeding at the close of the evidence given before the first surrogate, and hear any testimony the parties interested might offer, and thereon file a written decision.

Petition by Mary L. O'Connor for the judicial settlement of the accounts of Michael A. McOwen and Thomas Manahan, as executors of the will of Charles Winslow, deceased.

P. F. Bulger (D. C. Stoddard, of counsel), for petitioner.
Leslie W. Kernan and E. D. Mathews, for the executors.
Henry L. Gates, special guardian.

CALDER, S. The petition for the judicial settlement of the accounts of Michael A. McOwen and Thomas Manahan, as executors of the last will and testament of Charles Winslow, was presented on the 28th day of December, 1892, and thereupon a citation was duly issued, directing that all parties interested be and appear at a surrogate's court, in the city of Utica, on the 16th day of January, 1893. The executors' account was filed December 28, 1892. Objections to the same having been filed, testimony in respect thereto was taken from time to time before Surrogate Bright. During the evening of the 4th of June, 1894, the day upon which the case was submitted, he died, leaving the questions in dispute undecided. It was thereafter stipulated that upon the evidence a reargument should take place before his successor. Same was had on the 28th day of September, 1894, and on December 18th the surrogate filed his opinion. His term of office expired on December 31, 1894. An affidavit was subsequently presented to the present surrogate, containing a statement of the proceedings herein, upon which an order to show cause was granted, returnable February 25, 1895, why the same should not be completed. All parties were heard upon the motion. This follows the practice suggested in Re Espie, 2 Redf. Sur. 445.

The opinion of the former surrogate was expressive of his views upon the questions in controversy, and directed that findings in harmony with his conclusions be proposed for settlement. No findings of fact or conclusions of law were made, and nothing was done upon which a proper decree could be entered. That the surrogate did not consider that he had filed anything more than an opinion was clearly indicated by his concluding directions. An opinion contains the views of the judge in relation to a given subject. A decision embraces the findings of the court, upon which a decree or judgment may be entered. Section 2545 of the Code of Civil Procedure provides that the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law. The repeal of section 1023 is immaterial, as that did not apply to the practice in surrogate's court. Hartwell v. McMaster, 4 Redf. Sur. 392. What a decision should contain is well settled, and the questions in relation thereto have been frequently passed upon. Angevine v. Jackson, 103 N. Y. 470,

9 N. E. 56; In re Falls' Estate (Sup.) 10 N. Y. Supp. 41; In re Peck
(Sup.) 14 N. Y. Supp. 899; In re Kaufman, Id. 901; Hartwell
v. McMaster, supra.    A case on appeal will be remanded when it
appears that no decision has been filed containing findings of fact
and conclusions of law.    In re Falls' Estate, supra.    No decision
in this proceeding was, therefore, filed, as provided by the Code of
Civil Procedure.

In what manner and from what point can the present surrogate
proceed? Three ways are suggested: First. To file findings of
fact and conclusions of law in harmony with the opinion of the
former surrogate.    Second. To take up the matter de novo.    Third.
To take up the proceedings at the close of the evidence, hear addi-
tional testimony that any party interested may offer, and upon the
whole evidence file a decision which shall contain findings of fact
and conclusions of law.

I do not believe that the first or second method is the proper
practice to follow.    To sign findings based upon the opinion of the
former surrogate would not make them his, for he did not formulate
them; and, to be his, he should sign them.    Neither would they
be the findings of the present surrogate, predicated upon what
he believed to be the correct interpretation of the evidence, for he
did not hear the testimony, nor has he read the evidence.    To
sign findings in this matter would be simply a mechanical act, not
conclusive upon any party in the controversy.    In Re Will of McCue,
17 Wkly. Dig. 501, the evidence was taken before the surrogate,
who filed an opinion upon the last day of his term of office, express-
ing his views, but not containing findings of fact or conclusions of
law.    His successor, proceeding upon his opinion as filed, admitted
the will to probate.    It does not appear that the surrogate reviewed
the evidence, or that anything was done upon notice to the con-
testants, or that a statement was presented to the court containing
a history of the proceeding.    It was held that great doubt existed
as to the power of the successor to make formal findings upon the
opinion of his predecessor.    Here all the parties are in court, and
have been cognizant of every step in the proceeding.    The evidence
was transcribed at a large expense to the estate, the preparation
of counsel involved a great amount of labor, and the court was
engaged a considerable length of time, and to urge that the matter
be taken up de novo seems unnecessary, if not improper.    The per-
sonnel of the court may change, but the court itself is the same; the
office continues.    I appreciate the suggestion of counsel that the
witnesses and the testimony offered can, perhaps, be better under-
stood if the court deciding the questions may have the benefit of
the presence of the parties testifying.    It would be a hardship,
however, to compel proceedings of this character to be taken up
de novo.    If such were the case, upon the entry of each surrogate
upon the duties of his office, it would seriously interrupt the work
of the court, incur a large expense, and, in many instances, do
injustice.    I do not believe the legislature intended to impose such
a burden upon the court or litigants.

The Code provides (sections 2513, 2500) that the surrogate, in his discretion, may appoint and at pleasure remove a stenographer, and that every deposition, petition, report, account, voucher, or other paper must be carefully preserved, and that he shall deliver to his successor all papers and books kept by him; that said stenographer (section 2541) must, under the direction of the court, take full stenographic notes of all proceedings in which oral proofs are given, and the testimony must be legibly written out at length from the notes; that the minutes, after being properly authenticated, must be filed. The above sections, taken together, make the minutes records in the surrogate's office, and it is, therefore, unnecessary to take testimony again. Where testimony on the probate of a will has been commenced before the surrogate, and his term of office expires before it is completed, his successor in office need not take the testimony de novo. Reeve v. Crosby, 3 Redf. Sur. 74. The same principle is laid down in Re Martinhoff, 4 Redf. Sur. 286, and in Re Espie, 2 Redf. Sur. 446.

The third proposition I believe to be the correct one to follow. Section 2481, subd. 8, provides that a surrogate has power to complete any unfinished business pending before his predecessor in office, including proofs, accountings, and examinations. This is unfinished business, and is an accounting, and the statute is broad enough to confer jurisdiction upon me to complete this proceeding. The general rule drawn from the cases last cited is that, upon the office of the surrogate becoming vacant, either by death of the incumbent or upon the expiration of his term of office, his successor has power to take up the matter where left by his predecessor, continue the proceeding, and in a proper manner carry the same to its final determination. It is due, however, to any party interested that he have the right to offer additional or explanatory evidence upon any part of the issues involved. In this manner every interest will be fully protected. Upon reading the evidence taken by the former surrogate, and after hearing any additional proofs that may be offered, the present surrogate can then make his decision in writing, containing findings as required by the Code, upon which a decree may be entered.

An order may therefore be entered reopening the case, and giving any party interested the right, upon proper notice, to produce additional proofs, after which, at a time to be agreed upon, the case may be submitted.

Ordered accordingly.