(90 Misc. Rep. 526)

## In re McDERMOTT'S WILL.

(Surrogate's Court, Bronx County.   May, 1915.)

1. WILLS ☞163—CONTEST—BURDEN OF PROOF.
     The contestant of a will has the burden of proving undue influence.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 388–402; Dec. Dig. ☞163.]

2. WILLS ☞166—CONTEST—UNDUE INFLUENCE.
     Opportunity to exercise undue influence is not enough to justify the conclusion that it was exercised.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 421–437; Dec. Dig. ☞166.]

3. WILLS ☞53—TESTAMENTARY CAPACITY—SURROUNDING CIRCUMSTANCES.
     In determining whether the testator had testamentary capacity, his life, surroundings, relationship, and friendships should be considered.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 111, 112, 120–130; Dec. Dig. ☞53.]

4. WILLS ☞82—TESTAMENTARY CAPACITY—UNNATURAL WILL.
     A will cannot be criticized as unnatural because it ignored the testator's relatives, where there was no intimacy between the testator's relatives and himself, while strangers befriended and cared for him during his old age and last illness.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 203; Dec. Dig. ☞82.]

5. WILLS ☞52—CONTEST—BURDEN OF PROOF.
     The burden of proving testamentary capacity is upon the proponent.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 101–110; Dec. Dig. ☞52.]

6. WILLS ☞55—CONTEST—EVIDENCE—TESTAMENTARY CAPACITY.
     Evidence *held* to show the testator's testamentary capacity.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 137–158, 161; Dec. Dig. ☞55.]

7. WILLS ☞24—TESTAMENTARY CAPACITY—EVIDENCE.
     That decedent was old, slovenly in dress, and given to peculiarities in speech and habits, which at times impressed witnesses as·irrational, does not show want of testamentary capacity.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 52; Dec. Dig. ☞24.]

8. WILLS ☞37—VALIDITY—TESTAMENTARY CAPACITY—LUCID INTERVAL.
     Though testator was insane, his will, if executed in a lucid interval, will be upheld.
     [Ed. Note.—For other cases, see Wills, Cent. Dig. § 77; Dec. Dig. ☞37.]

Proceeding for the probate of the last will and testament of Peter McDermott, deceased.   Probate decreed.

Joseph H. Fargis, of New York City, for proponent.

Randolph Parmly, of New York City, for respondents Peter J. McDermott and others.

William J. O'Donnell, of New York City, for respondents Charles McDermott and others.

Frederick A. Stroh, of New York City, special guardian for infants, respondents.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SCHULZ, S. The instrument offered for probate as the last will and testament of the decedent bears date January 6, 1914. On the 24th day of January he was removed from his place of residence to a private hospital and sanatorium, where he died on February 6, 1914. He had been suffering with cancer of the rectum, characterized by the medical witness as a progressive disease. He left him surviving as heirs at law and next of kin a half-brother, half-sisters, nephews, nieces, grandnieces, and a grandnephew, in all 41 in number. Some of these heirs at law and next of kin have filed objections to the propounded document upon the usual grounds.

The evidence is clear, and to my mind convincing, that the document in question was executed on the day it bears date, and that the statutory formalities of execution were fully complied with, and I so find. Two questions remain for consideration, namely, whether the execution of the instrument was procured by the exercise of undue influence, restraint, fraud, or duress, and whether the alleged testator at the time of execution was of sound and disposing mind and memory.

[1, 2] There is no evidence that the testator was under any restraint at the time of the execution of the alleged will, or that any fraud was perpetrated or duress exercised. The evidence as to such execution, on the contrary, indicates that he was free from the same. Nor is there any evidence which, in my opinion, would make a finding possible that the document was procured by undue influence. The latter, being, as defined by the Court of Appeals, "an affirmative assault on the validity of a will" (Matter of Kindberg, 207 N. Y. 220, 100 N. E. 789), must be proved by the contestant, and from the evidence before me I conclude that the contestants have not sustained the burden of proof which is upon them in this regard. Opportunity to exercise undue influence is not enough to justify the conclusion that it was exercised. Cudney v. Cudney, 68 N. Y. 148; Post v. Mason, 91 N. Y. 539, 43 Am. Rep. 689. I accordingly determine that the document was not the result of such influence.

[3, 4] The only question which I consider debatable is whether the decedent was of sound mind when the act of testation took place. It is proper that, in considering the testamentary capacity of this alleged testator, his life, surroundings, relationships, and friendships should be inquired into. He was upwards of 70 years of age, and lived alone in a tenement house, occupying four rooms. Of his 41 relatives, 2 resided within a comparatively short distance of his home; 2 resided in the state of New Jersey within about two hours' travel from his home, and the others lived considerable distances from his place of abode, some in Ohio and others, among whom were seven minors, in Europe. There is no testimony in this proceeding which shows that any of the 34 relatives of full age ever showed any solicitude for this old man. With the exception of that of one witness, who testified that two years ago a man called upon the decedent, who stated that he was his nephew, and that the same man called again in November, 1913, the testimony on both sides seems to be in accord and to the effect that none of his relatives who lived within calling distance ever visited him or paid the slightest attention to his wants. Nor is there anything before me which

indicates that those who lived at a distance ever showed that they knew of his existence, or ever gave him a thought or sent him a word of greeting. On the contrary one of the witnesses with whom the decedent was on terms of intimate friendship testified that he told her that he never received any mail.

It is urged on behalf of the contestants that the fact that the decedent in the propounded document made no provision for any of these relatives, but on the contrary left all his property, consisting of some $12,-000, as set forth in the amended petition, to a person not related to him, lays the alleged will open to the criticism that it is an unnatural will. Before the instrument is criticized in that respect, the relations existing between the decedent and his heirs at law and next of kin should be considered to ascertain whether it is contrary to what the testator, from his feelings toward his relatives, if known, would have been expected to make; and when as here such inquiry discloses an apparent lack of intimacy between the testator and his relatives and a seeming lack of interest on their part for the welfare and care of the testator in his old age and ill health, I am not inclined to give much weight to the contention that the provisions of the propounded document are unnatural and indicate a lack of testamentary capacity.

[5] The burden of proving the testamentary capacity of the decedent at the time of the execution of the propounded document is upon the proponent. Cases cited in Matter of King, 89 Misc. Rep. 638, 154 N. Y. Supp. 238.

[6] Three witnesses testified to his mental condition upon the day the document was executed. Of these, two were subscribing witnesses. One of these subscribing witnesses had never seen the decedent before, and his opportunity to judge of the decedent's mental capacity was limited to a period of about 15 minutes in duration, during which the document was executed. His opinion is that the testator was of sound mind at that time, but his opinion must be considered in the light of the short time which he had to observe the decedent and the occurrences which took place at that time and upon which that opinion was based. The other attesting witness, however, knew the decedent for upwards of 4 years and had been in the habit of having a few words of conversation with him once or twice each week during that period, the witness being an attendant in the church at which the decedent attended and meeting him during the church services. He testifies to receiving instructions for the preparation of the will on January 3d and to his attendance on January 6th. Another witness who saw him on that day was a neighbor living in the same house, who attended to his wants during his last illness and before he was removed from his home, and saw him practically every day for a period of 6 years, and she testifies that his acts and conversations impressed her as rational. She also testifies that on the very evening when the will was executed he went to church, and after services spent about half an hour with her and her family in her apartment. The landlord of the premises where the decedent resided testifies to seeing him on numerous occasions, one of which was the day before the document was executed, and states that his conversations and acts at that time as testified to by

him impressed him as being rational. No witness offered by the contestants testifies to having seen him on the day the will was executed. Several witnesses testified to acts of the decedent and conversations had with him during the months of November and December preceding the execution of the instrument, which impressed them as being irrational. Two neighbors who resided on the same floor of the tenement where the testator lived also testified to occurrences, some of which took place a few days before the date of execution of the instrument, and some 9 or 10 days after that date, which they say impressed them as being irrational. A police officer who was sent to investigate the condition of the decedent on or about the 18th day of January, and who then spoke to and examined him, and who appears to have no interest in the matter at all, although he testifies that he had known the beneficiary for some 10 years, being on patrol in front of the latter's place of business, says that the acts and declarations of the decedent impressed him as being rational, and the physician who examined him when he entered the hospital on January 24th states that the ailment from which he was suffering was one which would not affect the mind, except during its last stages.

There is no evidence before me upon which I can base any conclusion as to the relations existing between the decedent and the beneficiary mentioned in the alleged will, except the testimony of one of the subscribing witnesses, as to a statement made to him by the decedent and the recital in the instrument. It appears that the subscribing witness who attended to having the document drawn was a friend of the sole beneficiary, and that when it was about to be executed he went out to look for some one to act as witness, and then brought in the other subscribing witness; and it developed that this subscribing witness was also a friend of the beneficiary, and that subsequently to the drawing of the paper the beneficiary married the sister-in-law of this witness. The subscribing witness first alluded to states that when he met the other subscribing witness he did not know that the latter was friendly with the sole beneficiary. The lack of testimony from which I could obtain an insight into the relations between the testator and the sole beneficiary, and the friendly relations which exist between the subscribing witnesses and the beneficiary, have caused me to scrutinize the testimony with great care.

The decedent, the attesting witness who attended to the drawing of the will, the beneficiary, and the other attesting witness were all residents of the same neighborhood and attended the same church, and there was nothing inherently improbable in their testimony, as to the facts surrounding the execution of the paper. If, therefore, I were to disregard the testimony of the witnesses who testified to the decedent's condition and to his acts and declarations on the date when the document was executed, I could assign no reason for doing so other than the fact that two of them knew the beneficiary. So far as the evidence discloses, they have no personal interest in the matter. It is true that there is a discrepancy between the testimony of one of the subscribing witnesses and the witness who attended the decedent as to the time of the execution of the will. This subscribing witness says

that he came there in the evening about 7 o'clock, left about 15 minutes past 7, coming back at a quarter to 8 and then remained 20 minutes, whereas the witness attending the decedent says that the decedent left for church at 7:30 and came back about 8:30. The time of the occurrence as testified to by each of these witnesses cannot be correct, but the very fact that they do not agree upon the exact time is, to my mind an indication, that they are telling the truth. If a conspiracy existed here to uphold this alleged will, the discrepancy in time as testified to would very likely not have existed. The circumstance that when the one subscribing witness went out to look for some one to act as a second witness he found a friend of the beneficiary, and one whose sister-in-law the beneficiary subsequently married, has also been considered by me; but, in view of the fact that all of the parties were residents of the same immediate neighborhood, I do not attach to it the importance urged by the contestants.

[7, 8] That the decedent was old, slovenly in dress, and given to peculiarities in speech and habit which, at times, were such as to impress the witnesses who so testified that they were irrational I have no doubt, but such is not sufficient to render a testamentary disposition of his property invalid. Hartwell v. McMaster, 4 Redf. Sur. 389; Matter of Murphy, 41 App. Div. 153, 58 N. Y. Supp. 450; Schouler, Wills & Adm. § 149. Even if he had been insane and had been so adjudged, his will would be valid if made during a lucid interval. Jarman, Wills (6th Ed.) *37; Schouler, Wills & Adm. § 81; Wadsworth v. Sharpsteen, 8 N. Y. 388, 59 Am. Dec. 499; Matter of Coe, 47 App. Div. 177, 62 N. Y. Supp. 376. The issue presented a question of fact which has not been without its difficulties of solution, but, upon the whole testimony, I reach the conclusion that the proponent has sustained the burden which I believe to be upon him, and that the testator was competent to execute a will of real and personal property when he executed the instrument in question. The propounded document will therefore be admitted to probate, with costs to the proponent and the special guardian to be taxed.

Probate decreed.