ing the unexpired term of the lease. But the solitary fact that on receipt of the keys he indicated his intention to sue will not sustain an implied agreement to relet for the tenant's account. The reletting did not take place until one month after the abandonment. It may well be that during that time the landlord changed his mind, and conceived the idea of reletting. No further communication was had with the tenant. No notice was given him. It does not appear that he was in any wise advised of the proceeding. How, then, could his assent have been expressed, or his acquiescence be implied? In Gray v. Ice-Cream Co., supra, the court held that, even upon service of a written notice, it did not conclusively follow that the landlord's right to relet existed, but that whether the tenant assented to the reletting, or whether the landlord relet for his own or for the tenant's benefit, became questions of fact for the jury. We appreciate that it is the tendency of the courts to go far in spelling out of slight circumstances the necessary assent to the reletting where no permissive provision is inserted in the lease. In this case, however, we fail to find any supporting facts, and cannot, therefore, depart from what is well-established law. It follows that the judgment should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.

(44 App. Div. 404.)

## In re YETTER.

(Supreme Court, Appellate Division, First Department. November 24, 1899.)

1. SURROGATE'S COURT—REFERENCE—APPEAL—EXCEPTIONS.

Code Civ. Proc. § 2545, provides: "An exception may be taken to a ruling by a surrogate, on the trial by him of an issue of fact, including a finding * * *. Upon such a trial the surrogate must file in his office his decision in writing, which must state separately the facts found * * *. An appeal from a decree * * * of a surrogate's court brings up for review * * * each decision to which an exception is duly taken * * * as prescribed in this section." Section 2546 authorizes the surrogate to appoint a referee to take and report the evidence, to hear and determine all questions arising on the settlement of an account, and to make a report thereon, subject to confirmation or modification by the surrogate, and provides that the provisions of the act applicable to a reference by the supreme court apply to a reference made under this section, so far as they can be applied. Held, that where the surrogate takes the testimony and tries the issues, or where a reference is made merely to take and report the evidence, the surrogate must make a decision containing special findings, and, for the purpose of review, exceptions must be filed thereto; but, where there is a reference "to hear and determine," the surrogate is to merely confirm, deny confirmation of, or modify the referee's report, and not to make findings, and the exceptions to the referee's findings are all that are necessary for further appellate review.

2. ADMINISTRATORS—ACCOUNTING.

An administrator, who, having taken property of the estate, crediting it therefor, is personally sued therefor by another, is not entitled to a credit, on his accounting, for the amount of the judgment recovered against him.

3. SAME.

    An administrator, though justified in defending a suit against him personally by one claiming an interest in decedent's business, is not entitled to credit, on his accounting, for the judgment recovered against him, without showing that the defense was active and reasonably adequate. It is not enough to show the pleadings and judgment.

4. SAME—EVIDENCE.

    The amount of the judgment in an action against an administrator, personally, by a third person, claiming one-half interest in decedent's business, is not evidence against the administrator, on his accounting, of the value of the one-half interest concededly belonging to deceased, with the value of which it is sought to charge him.

5. SAME.

    Where property of deceased is sold nominally to another, but really to the administrator, the latter is accountable for the real value thereof.

6. SAME—COSTS.

    Allowance of commissions to an administrator, when by reason of his misconduct he might reasonably have been denied them, gives him no right to insist on costs, also.

Appeal from surrogate's court, New York county.

In the matter of the judicial settlement of the account of Andrew B. Yetter, administrator of William Livingston, deceased. From a decree settling his account, he appeals individually and as administrator. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Frederick E. Anderson, for appellant.

Robert Weil, for respondents.

BARRETT, J. The decree appealed from settles the account of the appellant as the administrator of William Livingston, deceased. The account and objections were referred to a referee, "to hear and determine the allegations arising upon the settlement of the account." The referee, after a full hearing, made his report; and both the administrator and the contestant, the decedent's widow, duly filed exceptions thereto. The surrogate overruled all of the exceptions, save one of the contestant's, and in all other respects confirmed the report. The administrator thereupon appealed to this court, but filed no new exceptions to the decree.

The respondents contend, at the outset, that the exceptions to the referee's report raise no question for review; the only method of presenting the case on appeal being, as they insist, by means of further exceptions to the surrogate's decree.

Section 2545 of the Code of Civil Procedure provides:

    "An exception may be taken to a ruling by a surrogate, upon the trial by him of an issue of fact, including a finding, or a refusal to find, upon a question of fact, in a case where such an exception may be taken to a ruling of the court upon a trial without a jury of an issue of fact as prescribed in article third of title first of chapter tenth of this act. * * * Upon such a trial the surrogate must file in his office his decision in writing, which must state separately the facts found and the conclusions of law. Either party may, upon the settlement of a case, request a finding upon any question of fact, or a ruling upon any question of law; and an exception may be taken to such a finding or ruling, or to a refusal to find or rule accordingly. An appeal from a decree or an order of a surrogate's court brings up for review by each court to which

an appeal is carried each decision to which an exception is duly taken by the appellant as prescribed in this section."

Section 2546 gives the surrogate authority, in a special proceeding other than one instituted for probate or revocation of probate of a will, to appoint a referee—

"To take and report to the surrogate the evidence upon the facts, or upon a specific question of fact; to examine an account rendered; to hear and determine all questions arising upon the settlement of such an account, which the surrogate has power to determine; and to make a report thereon; subject, however, to confirmation or modification by the surrogate."

The section further provides that:

"The provisions of this act, applicable to a reference by the supreme court, apply to a reference made as prescribed in this section, so far as they can be applied in substance without regard to the form of the proceeding."

The meaning of these provisions seems clear. When the surrogate himself takes the testimony and tries the issues of fact, he must make a decision containing specific findings, and the appellant must file the required exceptions, if he desires an effective review. This also applies to a case where a reference is ordered merely to take and report the evidence. The surrogate himself then tries the issue, using the reported evidence as an aid. Where, however, a reference is ordered to hear and determine, there is no trial of the issues by the surrogate, within the meaning of section 2545. He may still, it is true, as the section provides, deny confirmation or modify the report. But his action in that regard is in its nature appellate or supervisory, not original. In such cases, section 2546 clearly governs. The intention was to conform the practice upon accountings to the ordinary practice in such matters in the supreme court. It certainly was not intended upon such accountings to have two primary trials,—one by the referee, and another by the surrogate,—with the two sets of findings and two sets of exceptions. Such a view would deprive section 2546 of all force, would impose upon the surrogate much of the very labor which the reference was provided to save him, and would inflict upon the parties an unnecessary and useless multiplication of routine work. We say useless, because in such a case a second set of exceptions would be quite needless to point out to the appellate court the specific error complained of. When the referee in such a case makes separate findings, numbering them properly, and exceptions are duly filed to one or more of such findings, the surrogate, upon the hearing, sustains or overrules each of the numbered exceptions to the numbered findings, and his decree thereupon shows upon its face precisely what is the subject of further review. No difficulty, that we are aware of, has ever been experienced on this head in the supreme court, and we can see no reason why that practice may not here, as the section directs, be "applied in substance." Upon an assignee's accounting in the supreme court, or upon the accounting which frequently follows an interlocutory judgment, the referee makes his separate findings; and they must, of course, be excepted to, if they are to be reviewed. But, after that has been done, who ever heard of requiring the

court to make findings anew, to be followed by exceptions anew? The practice has invariably been to bring on such exceptions to referees' reports for hearing at special term, and there to procure a final decree specifying the manner in which the court has dealt with these exceptions. Appeals from such decrees have always been entertained and decided without inconvenience or embarrassment, and it is difficult to perceive what there is in the characteristics of such an accounting as this in the surrogate's court to call for a variation in such simple and well-understood practice. Nor do we think that there is any controlling authority requiring a different construction of these sections. Mr. Jessup, in his work on Surrogate's Practice, cites very many cases in support of the opposite view, for which he claims the overwhelming weight of authority. We have examined those cases (In re Sprague, 125 N. Y. 732, 26 N. E. 532; Hewlett v. Elmer, 103 N. Y. 156, 8 N. E. 387; In re Kellogg, 104 N. Y. 648, 10 N. E. 152; Angevine v. Jackson, 103 N. Y. 470, 9 N. E. 56; Burger v. Burger, 111 N. Y. 523, 19 N. E. 99, and 21 N. E. 50; In re Bradway, 74 Hun, 430, 26 N. Y. Supp. 838; In re Marsh, 45 Hun, 108; In re Fall's Estate [Sup.] 10 N. Y. Supp. 41; Otis v. Hall, 6 N. Y. St. Rep. 592; In re Peck [Sup.] 14 N. Y. Supp. 899; In re Hood, 104 N. Y. 103, 10 N. E. 35), but fail to find there the decisive rule which he lays down. Many of them were probate cases, where the surrogate tried the issues. Some were accountings, where the surrogate himself took the account, and heard and determined all questions arising upon its settlement. Such was the case, most urgently pressed upon us, of In re Sprague, 125 N. Y. 732, 26 N. E. 532. The fact to which we have adverted does not appear in the report of this case, and therefore we might easily misapply the language of the opinion. We have examined the record among the court of appeals cases in the Bar Association, and find that in that case there was no reference, and that, as already observed, the surrogate tried the whole matter himself, when, of course, findings and exceptions were necessary. In other cases there was a reference, but no exceptions were filed to the referee's report. In still others no exceptions were filed either to report or decree. The only cases where the precise question was presented and decided are In re Keef, 43 Hun, 98, and In re Niles, 47 Hun, 348. In the former it was held that dual findings and exceptions were absolutely required; in the latter, that they were not. We think the rule stated in the Niles Case is in accordance with the intent and meaning of sections 2545 and 2546 of the Code, and is the more reasonable view of the proper practice.

It thus becomes necessary to consider the merits of the appeal. The appellant's first complaint is of the disallowance of a payment of $447.41 made to satisfy a judgment recovered against him by one Trumbull. Trumbull claimed to own a furniture van and two horses, which came into the appellant's possession when he entered upon his duties. The appellant resisted the claim, and Trumbull sued him personally for conversion, and obtained the judgment in question. The evidence tends to show that the appellant bought these articles from the estate. He admits that he took the van,

crediting the estate with $100 therefor; and he had extensive repairs made upon it, for his own account, prior to the trial. His testimony as to the horses is somewhat conflicting. He begins by grouping the van and horses together, and stating that he sold them all. He next says that he sold the van to himself, but cannot remember who bought the horses. Later he states that he "gave credit" for the horses. One of his employés testifies that both van and horses were removed to his place of business before the trial, and, as it would seem, that they were still there when the matter was taken into court. We think, on the whole, that the referee was justified in finding that the appellant bought the horses also. In our opinion, the appellant was rightly compelled to pay this judgment. For action taken on behalf of the estate, in good faith, and with reasonable justification upon the facts presented to him, an administrator will not be compelled to respond personally. But here, both ostensibly and in fact, the appellant was acting, not for the estate, but in his own interest. Had he been successful, the gain would have been his own. The property for which he was forced to pay remains his individual property, not that of the estate. The appellant was simply defending his own interests, and cannot reasonably seek reimbursement for so doing. The referee properly canceled the credits which the appellant extended to the estate for the van and horses, and that is the only relief to which he is entitled.

The appellant also complains of the disallowance of a payment of $427.57 made to satisfy another judgment obtained against him personally by one Aiken. We may say that the appellant was not only justified in resisting Aiken's demand, but he was bound, under the circumstances, to contest it. Aiken was a youthful employé of the decedent, at a small salary. He claimed a one-half interest in a certain secondhand furniture business carried on by the decedent. He did not pretend to have contributed any money to the business, and he offered no documentary evidence of an agreement giving him an interest in it. The claim was plainly suspicious, and the appellant could not properly do otherwise than resist it. Unfortunately, however, there is no evidence of diligent resistance or of genuine good faith in the effort to defeat this claim. The recovery of a judgment against the administrator personally was not enough, standing alone, to justify the surrogate in charging the estate with its amount. The facts and circumstances attendant upon the litigation and the trial should at least have been shown, and the referee and surrogate would then have been enabled to decide advisedly whether the administrator and his counsel had defended the case with reasonable care and skill,—in other words, whether the defense was active and reasonably adequate, or merely formal and perfunctory. The burden was upon the administrator, claiming the allowance against the estate of a judgment rendered against him personally, to show good faith and diligence; and he cannot be said to have fulfilled that burden by simply putting in the pleadings and judgment, and leaving all else entirely to presumption. If this item should be allowed, upon the bare fact of a

recovery, without the slightest proof as to how that recovery was secured, an estate could readily be mulcted by collusive suits against its representative personally, or by failure on its representative's part in any such suit to object to incompetent evidence, or by his neglect to put in evidence which would have defeated the claim. The items for counsel fees and expenses in defending these Aiken and Trumbull suits were also properly disallowed.

The appellant was surcharged with the sum of $307, as the value of the other one-half of the secondhand furniture business concededly belonging to the deceased. This sum was the amount of the verdict recovered by Aiken in the action against the appellant personally, to which we have referred. The referee adopted it as the standard of value of the decedent's one-half interest. We think this was clearly erroneous. The judgment in the Aiken suit was between different parties,—that is, between Aiken and the administrator personally,—while this proceeding is between the administrator, as such, and those who contest his account. It was not binding upon the administrator in his representative capacity, any more than it would have been binding upon the contestant. As evidence against the administrator in his representative capacity it was entirely incompetent,—in fact, irrelevant and immaterial. If the verdict had been for a nominal sum, it certainly would not have bound the estate or this contestant. The appellant could only be charged here upon independent evidence as to the value of this interest. There was no such evidence,—no definite evidence of its value at all. It follows that this part of the decree cannot stand.

The appellant was also charged with the sum of $1,200 for the lease and good will of the decedent's business, instead of $105, the sum for which they were sold at auction. This was clearly proper. The sale was made nominally to the appellant's son-in-law; but the latter almost immediately transferred the property to the appellant, and it is practically uncontradicted that the appellant was the real purchaser. He was thus accountable for the true value of the property. Ames v. Downing, 1 Bradf. Sur. 321. Upon this latter question considerable evidence was given, which we have examined carefully. We think, notwithstanding the ingenious and elaborate argument of the learned counsel for the appellant, that it amply justified the award.

The decree denies costs to the administrator, while allowing him commissions. We think that it would have been a justifiable exercise of discretion to deny both costs and commissions, for it appeared that the appellant omitted important items of property from his account, and bought in property of the estate for himself at inadequate figures. Under such circumstances, the fact that he was allowed commissions affords him no right to insist upon costs, also.

The other points presented by the appellant are unimportant, and call for no special consideration. So far as the exceptions to the refusals to admit certain evidence are concerned, the appellant was not prejudiced, and the provision of section 2545, that a sur-

rogate's decree "shall not be reversed for an error in admitting or rejecting evidence, unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby," is applicable.

The decree should be modified by disallowing the sum of $307, with which the appellant was charged, and as modified affirmed, without costs of the appeal. All concur.