ployed him to perform. The plaintiff's assignor knew that this was not Slater; knew that Slater was the surveyor. He had been instructed by the superintendent of street employment to do the work in accordance with the grade lines and stakes as given by Slater, the surveyor in charge; and before the city could, under any circumstances, be held liable, he was bound to show that Slater had given him grades and levels which were erroneous. Here Slater gave no grades and levels. Plaintiff's assignor acted upon the assumption that a man who appeared there and said he was Slater's assistant was the proper person to give such grades and levels, when in fact such person had, so far as appears, no authority from any one. If the plaintiff's assignor had requested the city to require Slater to give the grades, and Slater had failed to furnish the grades, the city would have been liable under the contract for any damage sustained by its failure to keep its contract; but as Slater gave no grades or levels, and the plaintiff's assignor made no request for such grades or levels, it seems to me that there is no basis for any claim that the city should be responsible for the mistakes made by the plaintiff's assignor in the performance of his contract. I concur, therefore, in the reversal of this judgment.

HATCH, J., concurs.

---

### In re McALEENAN.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. APPEAL AND ERROR—EXCEPTIONS—NECESSITY.

Where exceptions were taken to a referee's report to a surrogate's court, and the surrogate sustained the exceptions, basing his decision on the facts found by the referee, it is not necessary, in order to present a question to the appellate court, that the appellant should file exceptions, since the facts found by the referee stand in place of a finding of facts by the surrogate, and on appeal from the surrogate's decree the correctness of the surrogate's conclusions of law was presented for review.

2. EXECUTORS AND ADMINISTRATORS—WHAT CHARGEABLE TO EXECUTOR.

An executor presented his accounts to the surrogate for settlement, and creditors of the estate filed objections to the account because the executor did not charge himself with moneys received from benevolent institutions, which became payable to the testatrix, as beneficiary, after her husband's death. The referee found that the demand against one of the societies was transferred by the testatrix before her death to the executor in trust for her children, and that the money was paid to him and received by him as trustee; that the executrix transferred the demand against the other association to the executor in trust for her children, with power to collect it. The referee's findings of fact were not disturbed by the surrogate. *Held*, that the testatrix parted with her interest in the demands against the societies by her transfers, which vested in the trustee for the benefit of her children, and constituted no part o. her estate, and hence were not chargeable to the executor.

Appeal from surrogate's court, New York county.

Judicial accounting by Henry McAleenan as executor of the estate of Margaret Lavery, deceased, in which certain creditors and heirs filed objections. From an order sustaining objections to a referee's report, the executor and others appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Augustune R. McMahon, for appellant special guardian.
W. Arrowsmith, for appellant, executor and testamentary guardian.
M. Edward Kelley, for respondents James Hagerty and others.
James F. Fogerty, for respondent Edward T. Cody.
A. C. Weil, for respondent L. H. Quinn.

INGRAHAM, J. The executor, to whom letters testamentary of the estate of Margaret Lavery had been issued, presented his accounts to the surrogate for settlement; and creditors of the estate filed objections to the account, based upon the failure of the executor to charge himself with various sums of money received from benevolent associations, which became payable to the testatrix as widow of John Lavery, deceased. The questions presented on the accounting were referred to a referee. It appeared from the testimony before the referee that the executor received from two benevolent associations the sum of about $5,998; that John Lavery died on the 10th of December, 1897, and Margaret Lavery, his wife, the testatrix, on the 22d of December, 1897; that they left four infant children, who are the appellants in this proceeding and were parties to the accounting. The executor qualified on the 29th day of January, 1898, and as testamentary guardian of these four infant appellants on the same day; and he subsequently received the amounts payable by the benevolent associations, which he held as guardian for the infant appellants. There were two benevolent associations,—one known as the Catholic Benevolent Legion; and the other, the Royal Arcanum, of both of which John Lavery was a member. After the death of John Lavery, proof of loss was furnished to those associations. It further appeared that a certificate of membership of the Catholic Benevolent Legion was issued to John Lavery, and that Margaret Lavery, his wife, was named as beneficiary in said certificate. The benefit payable on the death of John Lavery would be $3,000. This amount was paid by check dated March 19, 1898, payable to the order of Margaret Lavery, wife and beneficiary of John Lavery, deceased, was indorsed by Margaret Lavery, wife and beneficiary of John Lavery, and by Henry McAleenan, executor, and was duly paid. In regard to the Royal Arcanum, it appeared that John Lavery was a member of the corporation, an organization incorporated under the laws of the state of Massachusetts for the purpose of helping widows and orphans and members; and that association paid $2,298 by a check to McAleenan, as guardian for the children of John Lavery. There were introduced in evidence two instruments executed on December 17, 1897, by Margaret Lavery, and duly acknowledged, by one of which she sold, assigned, and transferred to Henry McAleenan, as "trustee for my children, Mary, Catherine, Daniel, and Margaret Lavery, all my right, title, and interest to the benefit certificate, number 18,753, of the Catholic Benevolent Legion, and hereby authorize him to collect the insurance money due me thereunder from the Supreme Council of the Catholic Benevolent Legion, or from whatever

source the same is payable to me." The other instrument was in substantially the same form, and sold, assigned, and transferred her right, title, and interest in and to the benefit certificate issued by the society known as the Royal Arcanum of the City of New York. It appeared that when these instruments were executed by the testatrix she stated to her attorney who drew them that she wanted this money to go to her children; that after she executed them she handed them back to her attorney, who said, "Mrs. Lavery, I will hand these to Mr. McAleenan," and she said, "Yes." The constitution of the Royal Arcanum provides that:

"In case of the death of the person or persons named in the order before delivery is made, the order shall be returned to the supreme secretary with a statement of the facts, signed by the regent, treasurer, and secretary, under seal; and a new order shall be drawn, payable to the person or persons entitled to the benefit."

Upon this evidence the referee found that prior to the decease of Margaret Lavery, subsequent to the death of John Lavery, and before the collection by Margaret of the benefits which she was then entitled to receive from the Catholic Benevolent Legion and the Royal Arcanum, respectively, she made and executed two instruments of assignment, under seal, both dated December 17, 1897, one of which specified that she sold, assigned, and transferred to Henry McAleenan, trustee for her children, Mary, Catherine, Daniel, and Margaret Lavery, all her right, title, etc., to the benefit certificate No. 18,753 of the Catholic Benevolent Legion, and authorized him to collect the insurance money due her thereunder from the Supreme Council of the Catholic Benevolent Legion, or from whatever source the same was payable, etc., and the other of which specified that she sold, assigned, and transferred unto Henry McAleenan, as trustee for her children, Mary, Catherine, Daniel, and Margaret Lavery, all her right, title, and interest in and to the benefit certificate issued by the society known as the Royal Arcanum of the City of New York, all her interest in and to the insurance due to her, and authorized him to collect any insurance money due thereunder, or in consequence of her husband John Lavery being a member of said order; that at the time of the execution of the said instruments of assignment the said Margaret Lavery was ill and confined to her bed; that W. Arrowsmith, Esq., was her legal adviser and attorney, and that she directed him to deliver said instruments to Henry McAleenan; that he delivered said instruments of assignment to said Henry McAleenan; that said Margaret Lavery at the time of her death was indebted to certain persons specified in the report of the referee for goods sold and delivered to her,—and, as a conclusion of law, that Henry McAleenan, the executor of Margaret Lavery, deceased, was bound to account for several sums of money collected by him as such executor, but that so much of such moneys as he collected and received from these two benevolent associations, aggregating $5,998, is exempt from the claims of the creditors of Margaret Lavery, deceased, and that none of the creditors are entitled to receive any part thereof; that Henry McAleenan is chargeable with, and bound to account to the infant children of Margaret Lavery, deceased, for, the amount col-

lected from such benevolent associations. To this report the creditors filed exceptions, which, coming on before the surrogate, were sustained, the surrogate holding that the moneys paid by these associations were exempt from the claims of the creditors of John Lavery, and were also exempt from the claims of the creditors of Margaret Lavery until they were actually paid, but that by their payment to her or to her executor they lost their special exempt character, and became, like other assets of her estate, subject to the payment of her debts; and a decree was entered sustaining such exceptions, and surcharging the executor with the total amount of the money received by him, including the amounts paid to him from these benevolent associations. From that decree the special guardian for the infants and the executor appeal.

There were no findings by the surrogate, and it is claimed by the respondent that, in the absence of exceptions filed by the appellants, no question is presented to the appellate court for review. We think, however, that this claim cannot be sustained. The facts were found by the referee, and they stand in place of a finding of fact by the surrogate. The surrogate did not disturb these findings of fact, but, upon the facts found by the referee, sustained the exceptions to his conclusion of law that the executor was not chargeable with these sums received from these benevolent associations. No exception to that conclusion of law was possible, as no separate findings were made by the surrogate. Upon the appeal from the decree the question is presented as to whether the surrogate correctly determined the question of law. The question before the surrogate was upon the exceptions filed by the creditors to the report of the referee. He sustained such exceptions by his decree. Upon the appeal from such decree the question presented to this court is whether he properly sustained such exceptions. The cases relied on by the respondents do not apply. In Re Bradway, 74 Hun, 630, 26 N. Y. Supp. 838, the appeal was from the decree which sustained an exception to a finding of fact by the referee, and it was held that under those circumstances a mere appeal from a decree brings up no question for review. That decision was based upon In re Sprague, 125 N. Y. 732, 26 N. E. 532, where the court said that the record did not contain any exceptions to the findings or to the decision of the surrogate. But that case was tried by the surrogate, who made no findings, and consequently neither the general term nor the court of appeals could review the decision of the surrogate upon the facts. In Re Yetter, 44 App. Div. 408, 61 N. Y. Supp. 175, we held that, when a referee is ordered to hear and determine, there is no trial before the surrogate, within section 2545, Code Civ. Proc. Here the facts were found by the referee, and adopted by the surrogate as the basis of his decree, the question being one of law,—as, upon the facts found by the referee, the surrogate by his decree charged the executor with the amount of these benefits paid by the benevolent associations.

The question is therefore presented as to whether the executor of the estate is chargeable with moneys which had been assigned and transferred by the testatrix, before her death, to a trustee for the benefit of her children. If that assignment operated as a valid

transfer of her interest in the moneys which she was entitled to receive from these benevolent associations, the fact that the trustee to whom those assignments had been made and delivered was the same person named as the executor in her will would not justify the surrogate in charging the executor with the amounts that the trustee had received under the assignment. If these transfers are without consideration, they may be attacked in a court of equity, as made with intent to hinder, delay, and defraud creditors, but the surrogate has no jurisdiction to pass upon that question or to adjudge them void. In Re Randall, 152 N. Y. 513, 46 N. E. 945. If the creditors are to reach this fund in the hands of the trustee, they must proceed in a court of competent jurisdiction, in a proper action brought for that purpose. Upon this accounting the question is as to the property of the estate of the deceased, and the executor cannot be charged with any money or property except that which was the property of the testatrix at the time of her death. As to one of these associations,—the Royal Arcanum,—the referee found that the demand was transferred by the testatrix before her death, and the money was paid, not to the executor as such, but to the trustee for the children of the deceased, and was received by him in that capacity, and is held by him as such trustee. As to the Catholic Benevolent Legion, the referee found as a fact that the testatrix transferred all her right, title, etc., to the certificate to Henry McAleenan, as trustee for her children; that he was authorized to collect the insurance money due thereon, from whatever source the same was payable, and that that instrument was executed and delivered by the testatrix to Mr. Arrowsmith as her attorney, with a direction to deliver the same to Henry McAleenan; and that he delivered such instrument to the said Henry McAleenan. This report was confirmed, except so far as the conclusion of law is modified, surcharging the executor with the amount paid by these benevolent associations. The finding of fact standing unreversed, it would follow that the deceased parted with her interest in these moneys by the assignments and transfers, and that at the time of her death the legal title thereto had vested absolutely in the trustee for the benefit of the children, and that the claims against the institutions were no part of her estate.

It follows that the decree of the surrogate surcharging the executor with moneys which formed no part of the estate of the testatrix at the time of her death, and that his decree sustaining the exceptions to the referee's report, must be reversed, with costs to the executor and the guardian ad litem to be paid out of the estate, and the case remitted to the surrogate to settle the accounts of the executor in conformity with the views before expressed. All concur.