that, in case her son Nicanor predecease her, his son Nicanor shall assume the sole executorship the moment he attains his majority.

[3] By accepting the legacy, the legatee and his legal representatives will be bound to carry out the wishes of the testatrix as expressed in her will, and will be amenable to the courts as if bound by a contract to that end. Covenants of this kind are not within the purview of the statute against perpetuities (Chapl. Susp. § 139; Matter of Hart, 61 App. Div. 587, 593, 70 N. Y. Supp. 933), as all the interests are immediately alienable.

Clause second of the will is valid as above construed. Settle decision and decree in conformity herewith, and tax costs on notice. Costs of proponent and special guardian will be allowed out of the estate.

Decreed accordingly.

(72 Misc. Rep. 619.)

### In re THORNBURGH.

(Surrogate's Court, New York County. June, 1911.)

1. COURTS (§ 200½*)—SURROGATE—DISTRIBUTION OF ASSETS—ASSIGNMENT OF LEGACY—JURISDICTION.

   Under Code Civ. Proc. § 2472a, added by Laws 1910, c. 576, the surrogate has jurisdiction on a judicial accounting to ascertain the title to any legacy or distributive share, and to exercise all other powers necessary to complete disposition of the matter, and to determine the validity of assignments of the interests of legatees.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 479; Dec. Dig. § 200½.*]

2. CONSTITUTIONAL LAW (§ 48*)—CONSTITUTIONALITY OF ACT—PRESUMPTIONS.

   A Surrogate Court will presume the constitutionality of an act of the Legislature.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

3. BANKS AND BANKING (§ 181*)—USURY—PRIVATE BANKERS—EXEMPTIONS.

   The statutes relating to usury do not apply to discounts or loans made by private bankers under Laws 1892, c. 689, § 55, as amended by Laws 1900, c. 310, § 1.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 686–700; Dec. Dig. § 181.*]

In the matter of the judicial settlement of Edgar D. Thornburgh, executor. Decree surcharging executor.

Earle & Russell, for accounting executor.

Frank M. Wells, for Edgar D. Thornburgh as to the objection of Louis Silverman.

Bowers & Sands, for testamentary guardian of Harriet G. Benson.

Maurice W. Monheimer, for Louis Silverman, an objector to the account.

Jacob Stiefel, for Louis Silverman.

FOWLER, S. This matter comes before the surrogate upon the judicial settlement of an executor's account. The only objections to the account involve the validity of certain assignments of legacies in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the executor's hands, which the executor claims the right to retain as legatee under the will of Harriet B. Thornburgh, deceased. The executor asserts that such assignments, admitted to be made by him as legatee, are usurious, and for that reason void. The objections interposed really bring up for adjudication the validity of such assignments to Louis Silverman by Edgar D. Thornburgh, the legatee, who incidentally is also the executor of Harriet B. Thornburgh, deceased, and the accounting party herein.

[1] Under the language of section 2472a, Code of Civil Procedure, added by chapter 576, Laws 1910, it would appear that the surrogate has jurisdiction upon a judicial accounting to ascertain the title to any legacy or distributive share, and to exercise all other power, legal or equitable, necessary to the complete disposition of the matter.

It may be conceded for the moment, without extended inquiry, that prior to the year 1910 and the act mentioned the surrogate had no jurisdiction to try the validity of assignments of the interests of legatees on the judicial settlement of the accounts of an executor. Bevan v. Cooper, 72 N. Y. 317, 328, 329; Matter of Wagner, 119 N. Y. 28, 36, 23 N. E. 200; Sanders v. Soutter, 126 N. Y. 193, 200, 27 N. E. 263; Matter of Randall, 152 N. Y. 508, 520, 46 N. E. 945; Matter of McAleenan, 53 App. Div. 193, 199, 65 N. Y. Supp. 907; Matter of United States Trust Co., 80 App. Div. 77, 81, 80 N. Y. Supp. 475; Matter of Bunting, 98 App. Div. 122, 90 N. Y. Supp. 786. Under the Revised Statutes providing for executors' claims against the estate, the surrogate doubtless had jurisdiction to hear and determine any and all claims of executors against the estate. Shakespeare v. Markham, 72 N. Y. 400; Boughton v. Flint, 74 N. Y. 476; Neilley v. Neilley, 89 N. Y. 352; Richardson v. Root, 19 Hun, 473, 475. But that particular jurisdiction is not involved here.

The language of section 2472a, Code Civ. Proc., now seems broad enough to cover this matter here presented for adjudication. No claim has been made for trial of the issue of fact by jury, and the parties acquiesce in the jurisdiction of the surrogate. But it is well established that consent cannot confer jurisdiction on the surrogate if none otherwise exists.

The power of the Legislature to enact chapter 576, Laws 1910 (Code Civ. Proc. § 2472a), has been questioned; and it must be conceded that the decisions are somewhat variant on the power of the Legislature under the Constitution to increase the jurisdiction of the surrogate. Matter of Bunting, 98 App. Div. 122, 90 N. Y. Supp. 786; Matter of Runk, 200 N. Y. 447, 460, 94 N. E. 363; Alexander v. Bennett, 60 N. Y. 204; People ex rel. Mayor v. Nichols, 79 N. Y. 582.

But the transcendant power of declaring an act of the Legislature unconstitutional should never in my opinion be assumed by a court of first instance, except possibly in rare cases involving life or liberty, and where the invalidity of the legislative act is apparent on its face. The exercise of a judicial power to declare acts of the Legislature void should, I think, be reserved to the graver courts of the state in solemn session in banc, or held for the final review of such great ques-

tions. Otherwise the processes of the government may be disorganized by the action of a single judicial officer possessed of a little brief authority. Such an individual exercise of power tends to bring into contempt with the people an historic jurisdiction, approved by the wisdom of the greatest of mankind—a jurisdiction of fundamental importance to constitutional government when well exercised, and of most evil import when lightly exercised by a single judge animated, perhaps, by some theory squaring with his own conceptions of government or polity. Doubtless the ultimate power to test the validity of legislative enactments by a solemn comparison with delegated constitutional powers is of supreme importance and the keystone of our political fabric. But the power and exercise of the power are distinct.

It is well known that the power of the American judiciary to guard the citizen against legislative violation of delegated authority to enact laws is not original or a novelty in government, as often asserted. Nor is it a mere phenomenon or experiment. On the contrary, it is the result of political experience of long duration. In England a similar assertion of judicial power just missed a triumph. Lord Coke, in Dr. Bonham's Case, 8 Rep. 118a, cited several ancient cases in support of the inherent judicial power to pass on the validity of an act of Parliament; and a great judge, Hobart, Lord Chief Justice of the Common Pleas, in the reign of James I (Day v. Savage, Hobart, 87), used these memorable words:

"Even an act of Parliament, made against natural equity, as to make a man judge in his own case, is void in itself for jura naturæ sunt immutabilia, and they are leges legum."

The embarrassment of exercising such a judicial power in a monarchy where judicial proceedings were theoretically before the king himself—coram rege ipso—caused it to miscarry in the end in England. But in the English colonies the power of the judiciary to determine an act of the colonial Legislature void as unconstitutional was very familiar to the framers of the federal Constitution. The judiciary articles of that Constitution and of the state Constitution were only an evolution, and no artifice or innovation. The due exercise of so fundamental a principle of American government—one so vital to national existence—should not, I think, be invaded rashly, or degraded by an immoderate use in a court of first instance.

[2] For these reasons the surrogate would regard it as a breach of decorum for him to undertake to pass upon the validity of chapter 576, Laws 1910. In this court the constitutionality of an act of the Legislature must be presumed for the sake of propriety, if for no other reason.

[3] Upon the merits of the real contention in this matter it appears as follows: The objector is the assignee of the legacies. He complains that in disregard of three assignments executed to and held by him against the individual interest of the executor as a legatee the executor has paid out to himself and others moneys which should have been paid to the objector as such assignee. The assignments amount to $1,875. The executor sets up the defense that the assignments were given to secure usurious loans obtained from the objector. The as-

signee seeks to avoid this defense by showing that he is a private banker and as such entitled to the exemption contained in section 55, c. 689, Laws 1892, as amended by section 1, c. 310, Laws 1900. This section reads as follows:

"Every bank and private and individual banker doing business in this state may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill or evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover back twice the amount of interest thus paid from the bank and private or individual banker taking or receiving the same, if such action is brought within two years from the time the excess of interest is taken. * * * The true intent and meaning of this section is to place and continue banks, and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of congress entitled 'An act to provide a national currency by pledges of United States bonds, and to provide for the circulation and redemption, thereof.'" Laws 1870, c. 163; Laws 1892, c. 689, § 55, as amended by Laws 1900, c. 310, § 1.

The United States statute is, mutatis mutandis, in the same terms as the above. Act June 3, 1864, c. 106, § 30, 13 Stat. 108. Both of these statutes will be found in Schlesinger v. Gilhooly, 189 N. Y. 6, 81 N. E. 619, et seq.

In Caponigri v. Altieri, 165 N. Y. 255, 59 N. E. 87, it was held that the penalty cannot be enforced by way of counterclaim, but only by penal action.

It is conceded by the executor's counsel that at the time of the making of the assignments (December 24, 1908, January 19, 1909, and March 8, 1909) private bankers were not in any way subject to the supervision or scrutiny of the state authorities, and were not made so till 1910, when they were brought within the supervision of the banking department. The objector's counsel practically concedes that the transactions which resulted in the making of the assignments were usurious loans, since he says nothing to the contrary in his brief. He maintains that he has established his defense under the above statute. The executor's counsel contends:

(1) That the objector has not properly proved that he is a private banker, since he has not shown in detail the nature of the business conducted by him.

(2) That the statute should be strictly construed, so as to afford protection only in the case of transactions strictly in the nature of banker's business, and not to transactions like those at bar, which were not of that nature, the credit being opened and the passbook issued merely as a veil to cover the usurious loan, and bring it within the protection of the statute.

As to the first proposition for the executor, the only decision I find is the other way. In Hessberg v. Matter, 64 Misc. Rep. 97, 117 N. Y. Supp. 1014, by McLean, J., it was held that the plaintiff's own statement on the trial that his business was "banking, private banker," in

the absence of any other evidence on the subject, was sufficient to establish the fact that he was a private banker under the statute now under consideration. In the present case the evidence is much stronger. The alleged banker in the present case did not, it is true, testify himself, but his clerk testified that the objector was a private banker; that he was so described upon his office door; that he issued a passbook to Mr. Thornburgh bearing the words, "Louis Silverman, private banker," which is in evidence; and that the same words appear upon the checks drawn by Mr. Thornburgh, which are also in evidence.

As to the second contention for the executor, the case last cited is also an adjudication in point. The plaintiff in that case loaned moneys to the defendant, who assigned in writing as security therefor certain outstanding accounts in his favor against third persons. The defendant afterward collected the accounts, and refused to pay the amount to plaintiff on demand. The plaintiff being a private banker, the defense of usury was overruled. So far as my investigations have gone the other cases arising under this statute wherein the defense of usury was not allowed to prevail did concern strictly commercial paper. Perkins v. Smith, 116 N. Y. 441, 448, 23 N. E. 21; Caponigri v. Altieri, 165 N. Y. 255, 59 N. E. 87; Schlesinger v. Gilhooly, 189 N. Y. 1, 81 N. E. 619. I do not think, however, that this is a controlling consideration, particularly in view of the Hessberg Case, supra. In Schlesinger v. Lehmaier, 191 N. Y. 69, 83 N. E. 657, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591, the defense of usury prevailed in regard even to commercial paper discounted by a bank, but not for reasons material here.

I think the objections of Mr. Silverman must be sustained, and the executor surcharged with $1,875.

Decreed accordingly.