1. EXECUTORS AND ADMINISTRATORS ⬢⟝51—ASSETS OF ESTATE—DAMAGES FOR DEATH.

   Damages recovered by an executor in an action for wrongful death, under Code Civ. Proc. §§ 1902–1905, are not strictly a part of decedent's estate.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 132–138; Dec. Dig. ⬢⟝51.]

2. DEATH ⬢⟝11—RIGHT OF ACTION—COMMON LAW.

   The cause of action, under Code Civ. Proc. §§ 1902–1905, for wrongful death, did not exist at common law; the original of the right or cause of action being Lord Campbell's Act (St. 8 & 10 Vict. c. 93).

   [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 10, 15; Dec. Dig. ⬢⟝11.]

3. STATUTES ⬢⟝199—WILLS ⬢⟝497(3)—"CHILDREN."

   In respect to wills and statutes, the word "children" will also include "grandchildren," where the intention to use the word in such broader extent is evident.

   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 277; Dec. Dig. ⬢⟝199; Wills, Cent. Dig. § 1082; Dec. Dig. ⬢⟝497(3).

   For other definitions, see Words and Phrases, First and Second Series, Child—Children.]

4. DEATH ⬢⟝101—DISTRIBUTION OF DAMAGES—STATUTE—CHILDREN—GRANDCHILDREN.

   Under Code Civ. Proc. § 1903, as amended by Laws 1911, c. 122, providing that damages recovered for wrongful death are for decedent's husband or wife and next of kin, and must be distributed as if they were unbequeathed assets, but in case decedent shall have left a wife or husband, but no children, the damages shall be solely for the survivor's spouse, damages for the death of a decedent, who left a widow and two grandchildren, the children of his deceased daughter, were payable one-third to the widow and two-thirds to the grandchildren, after the deduction of the sums provided by the statute, since "children," as used, signifies "grandchildren"; children generally in a direct line not being limited to immediate offspring.

   [Ed. Note.—For other cases, see Death, Cent. Dig. §§ 132–140; Dec. Dig. ⬢⟝101.]

5. CONSTITUTIONAL LAW ⬢⟝45—VALIDITY OF STATUTE—POWER OF COURT.

   Courts of the first instance should not declare statutes unconstitutional, except in the clearest and most imperative cases.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. ⬢⟝45.]

---

⬢⟝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. EXECUTORS AND ADMINISTRATORS ☞111(6)—WRONGFUL DEATH—ATTORNEY'S FEES—STATUTE.**

Under Code Civ. Proc. § 1903, providing that the personal representative, suing for a wrongful death, may deduct from the recovery the reasonable expenses of the action, etc., which must be allowed by the surrogate, the agreement of an executor, with attorneys who prosecuted such an action, to pay contingent fees of one-third, does not control the surrogate, where, in his judgment, the amount is unreasonable; the executor being unable to make an agreement for unreasonable compensation payable out of damages, so as to bind the fund in court, the fact that the fee is contingent making no difference.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 456; Dec. Dig. ☞111(6).]

**7. EXECUTORS AND ADMINISTRATORS ☞507(4)—WRONGFUL DEATH—REASONABLENESS OF ATTORNEY'S FEES—DETERMINATION.**

Where the question of the reasonableness of attorney's fee for prosecuting an action for wrongful death, under Code Civ. Proc. §§ 1902–1905, is raised by objections to the executor's account, it should be passed on in the usual way by reference.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2185–2191; Dec. Dig. ☞507(4).]

In the matter of the judicial settlement of the account of James S. Meng as executor of the estate of Henry Bischoff, deceased. Case referred for hearing and determination, and final decree directed in accordance with the opinion; the orders to be made on the referee's report.

Ingram, Massey, Clark & Lowe, of New York City (Albert Massey, of New York City, of counsel), for executor.

William L. Turner, of New York City, for Elizabeth Bischoff.

Morgan J. O'Brien, Jr., of New York City, special guardian.

FOWLER, S. Hon. Henry Bischoff, a justice of the Supreme Court of this state, was a passenger on an elevator in the Emigrants' Industrial Savings Bank Building in this city on March 28, 1913, when an accident occurred, through the negligent operation of the elevator, resulting in his death. He left him surviving a widow and two grandchildren, who are the children of a deceased daughter of decedent by a former wife, also deceased. He had no other children or next of kin. The executor named in his last will and testament, James S. Meng, duly qualified as such executor on April 18, 1913, and as such executor, pursuant to sections 1902 to 1905 of the Code of Civil Procedure, brought an action in the Supreme Court of this state against the Emigrants' Savings Bank to recover damages for the death of his testator. In this action the executor recovered a verdict for the sum of $100,000. Upon a motion to set aside the verdict, the trial court directed that it be set aside, unless the plaintiff filed a stipulation consenting to reduce the verdict to $70,000, in which event the verdict was so modified, and the motion to set the same aside denied. The plaintiff subsequently consented that the verdict be so reduced, and judgment was thereupon entered for the sum of $77,491.28. This judgment was affirmed by the Appellate Division (Meng v. Emigrants' Industrial Savings Bank, 169 App. Div. 27, 154 N. Y. Supp. 509) and no further

appeal was allowed. As a result, therefore, of the action indicated, there was paid on December 18, 1913, to the executor the sum of $82,036.70.

[1] This proceeding now before me is instituted for the judicial settlement of the account of the executor in respect of the fund recovered under sections 1902 to 1905 of the Code of Civil Procedure as damages for negligence resulting in the death of his testator, Henry Bischoff. This proceeding, therefore, is not for the judicial settlement of the account of the executor, qua executor, under the general law and rules applicable to the settlement and administration of a decedent's estate, but is a special proceeding brought pursuant to section 1903 of the Code of Civil Procedure for the account and distribution of this special fund only. Stuber v. McEntee, 142 N. Y. 200, 36 N. E. 878; Mundt v. Glokner, 24 App. Div. 110, 48 N. Y. Supp. 940; Matter of McDonald, 51 Misc. Rep. 318, 101 N. Y. Supp. 275. Damages recovered by an executor in the kind of action indicated are not strictly a part of decedent's estate. Cohen v. L. I. R. R., 154 App. Div. 603, 607, 139 N. Y. Supp. 887.

[2] The cause of action from which the fund now in court arose, and the distribution of which is now sought in this court, had a purely statutory origin. It did not exist at common law. Osborn v. Gillett, L. R. 8 Exchequer, 88; Whitford v. Panama R. R., 23 N. Y. 465. The original of this right or cause of action was St. 8 & 10 Vict. c. 93, enacted in 1846, and known as "The Fatal Accidents Act" or as "Lord Campbell's Act." That act is as follows:

"Whereas no action at law is now maintainable against a person who by his wrongful act, neglect or default may have caused the death of another person, and it is oftentimes right and expedient that the wrongdoer in such case should be answerable in damages for the injury so caused by him: Be it therefore enacted, that whensoever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"2. Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased, and in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties in such shares as the jury in their verdict shall find and direct.

"3. Provided, always, that not more than one action shall lie for and in respect of the same subject matter of complaint, and that every such action shall be commenced within twelve calendar months after the death of such deceased person.

"4. In every such action the plaintiff on the record shall be required, together with the declaration, to deliver to the defendant or his attorney a full particular of the person or persons for whom and on whose behalf such action shall be brought and of the nature of the claim in respect of which damages shall be sought to be recovered.

"5. The following words and expressions are intended to have the mean-

ings hereby assigned to them respectively, so far as such meanings are not excluded by the context or by the nature of the subject matter; that is to say, words denoting the singular number are to be understood to apply also to a plurality of persons or things, and words denoting the masculine gender are to be understood to apply also to persons of the feminine gender, and the word 'person' shall apply to bodies politic and corporate, and the word 'parent' shall include father and mother, and grandfather and grandmother, and stepfather and stepmother, and the word 'child' shall include son and daughter, and grandson and granddaughter, and stepson and stepdaughter.

"6. This act shall come into operation from and immediately after the passing thereof, and nothing herein contained shall apply to that part of the United Kingdom called Scotland."

In almost exactly the same language, as will be seen by a comparison, the Legislature of this state, in 1847, passed a like act, creating a similar cause of action, theretofore unknown to the common law and the law of this state (chapter 450, "An act requiring compensation for causing death by wrongful act, neglect or default"). The New York act is as follows:

"Section 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default, is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Sec. 2. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportions provided by law in relation to the distribution of personal property, left by persons dying intestate; and in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person: Provided that every such action shall be commenced within two years after the death of such deceased person.

"Sec. 3. This act shall take effect immediately."

This act was amended in 1849 (Laws of 1849, c. 256), whereby the amount of recovery in this kind of action was limited to $5,000, and this limitation continued in force until 1895. In the New York act of 1847 it was provided that the amount recovered should be for the exclusive benefit of the widow, husband, and next of kin of such deceased person, and should be distributed to such widow or husband and next of kin in the proportions provided by the law relating to the distribution of personal property left by persons dying intestate. In 1870 by amendment the word "husband" was inserted in the act. In 1880 all of the provisions of this act of 1847, as amended, were made part of the Code of Civil Procedure (sections 1902, 1903, and 1904 of the Code of Civil Procedure), and since then they have remained in the Code. By the Constitution of 1894, which went into effect January 1, 1896, the following became part of the organic law of the state:

"Article 1, section 18. The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation."

In 1895 the Legislature accordingly repealed that portion of the law which limited the recovery to $5,000. The sections of the Code continued in this form until 1911, when, by chapter 122 of 1911, in effect September 1, 1911, section 1903 was amended so as to read as follows:

"Section 1. Section nineteen hundred and three of the Code of Civil Procedure is hereby amended to read as follows:

"'Sec. 1903. *Distribution of Damages Recovered.* The damages recovered in an action, brought as prescribed in the last section, are exclusively for the benefit of the decedent's husband or wife, and next of kin; and when they are collected, they must be distributed by the plaintiff, as if they were unbequeathed assets, left in his hands, after payment of all debts, and expenses of administration; subject, however, to the following provision, to wit: In case the decedent shall have left him surviving a wife, or a husband, but no children, the damages recovered shall be for the sole benefit of such wife or husband. The plaintiff may deduct from the recovery the reasonable expenses of the action, the reasonable funeral expenses of the decedent, and his commissions upon the residue; which must be allowed by the surrogate, upon notice, given in such a manner and to such persons, as the surrogate deems proper.'

"Sec. 2. This act shall take effect September first, nineteen hundred and eleven."

By this amendment the damages recovered, while exclusively for the benefit of decedent's husband or wife and next of kin, when collected, were to be distributed subject to the following provision, to wit:

"In case the decedent shall have left him surviving a wife, or a husband, but no children, the damages recovered shall be for the sole benefit of such wife or husband."

Prior to this last amendment this section read:

"But the plaintiff may deduct therefrom the expense of the action."

By this amendment last noticed the word "reasonable" was inserted, so that the section thereafter read:

"The plaintiff may deduct from the recovery the reasonable expenses of the action," etc.

Section 1905, C. C. P., referring to this right of action, provided that the term "next of kin," as used in the foregoing sections, has the meaning specified in section 1870, Code of Civil Procedure. Section 1870 defines the term "next of kin" to include all those entitled, under the provisions of the law relating to the distribution of personal property, to share in the unbequeathed assets of the decedent, after the payment of the debts and expenses, other than a surviving husband or wife. The law providing for the distribution of the personal property of a decedent, in so far as it relates to the present state of facts, was the same on January 1, 1895, as it was on March 1, 1913. The surplus of decedent's personal property, after the payment of debts, must be distributed to his widow, children or next of kin in manner following: One-third part to the widow and the residue in equal shares among the children and such persons as legally represent the children, if any of them have died before the deceased.

On this accounting two primary questions are presented for my de-

termination: First. The executor has cited upon this accounting the grandchildren of decedent, being the children of his deceased daughter, and he maintains that under the law they are entitled to two-thirds of the damages recovered in this action, subject to the deductions provided by the act. The widow of decedent, on the other hand, claims that by reason of the amendment of 1911 she is entitled to the entire recovery, after the deductions of the reasonable expenses of the action and the executor's commissions. Second. The executor has set forth in his account that he has paid to Messrs. Ingram, Massey, Clark & Lowe, attorneys who prosecuted the action against the Emigrants' Industrial Savings Bank, the sum of $27,345.56, as fees for their services, costs and disbursements, this being one-third of the amount of the fund recovered. The widow of decedent has filed objections to the allowance of this amount as not "reasonable expenses of the action." The special guardian for the infant grandchildren has likewise filed objections to the allowance of this amount. I shall now proceed to the consideration of the first question indicated.

In passing upon the right of the grandchildren of the late Mr. Justice Bischoff to participate in the distribution of the damages recovered in the action brought under the provisions of sections 1902 to 1905 of the Code of Civil Procedure, two inquiries are made necessary: 1. Are the children of a deceased child entitled to participate in such distribution, notwithstanding the amendment of 1911 (Laws of 1911, c. 122), which provided that where the decedent left him surviving a wife or husband, but no children, the damages recovered shall be for the sole benefit of such wife or husband; that is, does the word "children" in the statute as it now exists include grandchildren? 2. Did the constitutional provision of 1894, "that the right of action then existing to recover damages for death shall never be abrogated," prevent the Legislature thereafter from depriving next of kin from participating in any recovery?

It is to be observed that the English statute of 1846—the exemplar of the New York statute—in section 5 thereof states that the word "child" shall include son and daughter and grandson and granddaughter and stepson and stepdaughter. The English statute also provides that:

"The jury may give such damages as they may think proportionate to the injury resulting from such death to the parties respectively for whose benefit the action should be brought, and the amount so recovered * * * shall be divided amongst the before-mentioned parties in such shares as the jury by their verdict shall find and direct."

The New York statute did not pursue this manner of distribution, but provided that the damages recovered shall be for the benefit of the wife (later on in 1870 "husband" was added) and next of kin, to be distributed amongst these in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate; i. e., according to the statute of distributions.

[3] Now, aside from any legislative mandate upon the subject, it has been frequently held that the word "children" will also include

"grandchildren" where the intention to use the word in such broader extent is evident. Prowitt v. Rodman, 37 N. Y. 42; Matter of Paton, 111 N. Y. 486, 18 N. E. 625; Pfender v. Depew, 136 App. Div. 639, 121 N. Y. Supp. 285; Beebe v. Estabrook, 79 N. Y. 246. That the word "children" may mean grandchildren or issue generally has been determined, with respect to wills, in Prowitt v. Rodman, supra, and with respect to statutes in Beebe v. Estabrook, supra. In Prowitt v. Rodman the testator gave certain property to his daughter during her life, and after her death to such children as shall be living at the time of her death, and it was held that the expression "children" in the will was not limited in its effect to the immediate offspring of testator's daughter, but included remoter descendants or grandchildren. In that case the court cited with approval the language of Knight Bruce, L. J. (in the case of Earl of Tyrone v. Marquis of Waterford, 1 De Gex, Fisher & Jones, 637), as follows:

"The word 'children' is a very flexible expression, and, according to the correct use of the English language, has more meanings than one. Authoritative writers, as well as the habits of educated society, show that an accurate speaker may, without impropriety, use the term 'children' for the purpose of indicating offspring or descendants or posterity in whatever degree. If, therefore, in this will, we read the word 'children' as equivalent to 'issue' or 'descendants,' we read it in one of the senses belonging to it, though not in that which is the most usual. * * * "

In Prowitt v. Rodman, supra, the learned justice writing for the court, after reviewing and collecting the cases on the subject, concludes:

"These authorities fully establish the proposition that the term 'children' may include issue however remote, and will be held so to include whenever the reason of the thing demands it."

There are other authorities upon this point. Chancellor Kent, in his Commentaries (4 Kent's Comm. 419, n.) says:

" 'Children,' as well as issue, may stand in the collective sense for grandchildren where the justice or reason of the case requires it."

The Civil Code of Louisiana (articles 25, 26, n. 14), it may be observed in passing, expressly enacts:

"That under the name 'children' are comprehended not only children of the first degree but the grandchildren, great-grandchildren and all other descendants in a direct line."

In Matter of Paton, 111 N. Y. 480, 18 N. E. 625, the court said, after a consideration of the authorities:

"The word 'children' is a flexible expression, and we think that meaning should be preferred, when the reason of the thing sustains it, which permits the children of a deceased child to inherit."

In Pfender v. Depew, 136 App. Div. 636, 121 N. Y. Supp. 285, the appeal presented a question which the court stated often recurs and is frequently difficult to answer: Whether or not the word "children," when contained in a will, should be construed in its primary sense or in a more general and comprehensive sense, as equivalent

to issue or descendants. The authorities were again considered, and the Appellate Division said:

"Where two interpretations of the word 'children' are possible, the courts have been much disposed to adopt that one which will not serve to disinherit the heirs of the testator."

In Beebe v. Estabrook, 79 N. Y. 246, the question before the court was the construction of the statute in respect to advancements, and the argument was made that a grandchild cannot in the distribution of the estate of an intestate have the benefit of advancements made by the intestate to his immediate children, because, as the statute used the word "children" in that connection, the word "children" is to be taken in its popular sense as referring to the immediate offspring of the intestate. It was maintained that it is only as between the immediate offspring of intestate that the question of advancements can be considered in making the distribution of the estate of an intestate. The conclusion of the court was:

"This is not the true sense of the statute, and the word 'children' in the section quoted is used to designate all the descendants of the intestate entitled to share in the distribution."

[4] I am convinced that the proper construction of the word "children" in the amendment of 1911 of section 1903, C. C. P., hereinbefore referred to, is the broader one of descendants generally, and not the narrower one of immediate offspring or children of the first degree, and that such construction is required by the justice and reason of this case. If, in this case, the decedent had left him surviving a widow, one or more living children and grandchildren, children of a deceased child, such grandchildren would undoubtedly participate with the living children in the distribution. Otherwise the provisions created by the amendment of 1911 would not be effectual, and the damages recovered distributed as provided by the statute of distributions; that is, one-third to the widow and two-thirds to the children and such persons as legally represent the children, if any of them had died before the decedent. Grandchildren would certainly participate in the distribution if an uncle or aunt had lived.

The proper construction of the word "children" in the amendment of 1911 (section 1903 of the Code of Civil Procedure, as it now exists) is that it signifies children generally in a direct line, and is not limited to immediate offspring. Therefore the damages recovered by the executor, and now before this court, should be distributed one-third to the widow and two-thirds to the grandchildren, after the deductions of the sums provided for by the statute.

The executor next makes the contention that the amendment of 1911, which deprives the next of kin of a participation in the recovery where there is a husband or wife and no children surviving, is unconstitutional, because of its conflict with article 1, section 18, of the state Constitution 1894, providing that the right of action then existing to recover damages for death shall never be abrogated. This contention has never been passed upon. In Matter of Taylor,

144 App. Div. 634, 129 N. Y. Supp. 378, the court said, with reference to section 18, article 1, of the state Constitution:

"The 'right of action' so referred to was the right of action given under the statute of 1847, as amended, and was a right of action given for the benefit of the husband or widow and next of kin of the decedent, and it was thus placed beyond any interference by the Legislature as to its essential elements."

Matter of Taylor was, however, decided before the amendment of 1911 went into effect, and therefore could not have considered that change in the law.

In Matter of Brennan, 160 App. Div. 401, 145 N. Y. Supp. 440, it appears that the death of decedent, for which there was a recovery in damages, took place before the amendment of 1911 to section 1903 of the Code, although the action was tried and the recovery of judgment was subsequent. In that case the decedent left him surviving a widow, his mother, four sisters, and one brother, and no children or descendants. The court held that the fund was to be distributed in accordance with section 1903, as it existed at the time of the death of decedent and that the amendment enacted after the death, though before the recovery, did not apply. It was expressly stated by the court, in its opinion, that they did not deem it necessary to consider the effect of the constitutional amendment of 1894, or whether the words of section 18, article 1, of the Constitution are sufficiently broad to deprive the Legislature of the power to pass any statute which will alter the previously existing basis of distribution.

[5] While, in our system of government, a statute which plainly violates the organic law, called the constitution of government, is undoubtedly ultra vires and therefore void, as being no statute at all, yet it is well recognized that courts of first instance ought not to declare statutes unconstitutional except in the clearest and most imperative cases. Willoughby on the Const. c. 111. Although the validity of these indirect limitations upon the powers of courts of first instance is denied by some writers on the Constitution, I have thought it more seemly to act on it in several cases in this court (Matter of Thornburgh, 72 Misc. Rep. 619, 132 N. Y. Supp. 268), preferring to leave the exercise of such great powers to the higher judicatories wherever possible. But inasmuch as I have concluded that under a proper construction of the word "children" the grandchildren here are entitled to participate in the distribution, in accordance with the statute of distributions, it is unnecessary to pass upon and decide this question of the constitutionality of the amendment.

[6, 7] We come now to the last point. It is provided by section 1903, C. C. P., in its present form, that the reasonable expenses of the action may be deducted by the executor, prior to the distribution of the sum recovered, among those entitled to participate therein. The word "reasonable" was added by the amendment of 1911, before referred to. Prior thereto that part of section 1903 read as follows:

"But the plaintiff may deduct therefrom the expenses of the action * * * which must be allowed by the surrogate. * * *"

The executor claims on this accounting an allowance of $27,345.56 —that is, 33⅓ per cent. of the whole recovery—for the fees, disbursements, and expenses of his attorneys, who instituted the action and brought it to a successful issue. While no written contingent retainer agreement for a one-third is asserted to have been made by the executor, it is claimed on his behalf that immediately upon the death of his testator he employed these attorneys upon some such agreement. While contingent fees are not unusual in this jurisdiction, yet in view of the position of the decedent and the amount of the recovery, it may be that 33⅓ per cent. of the total amount recovered is more than should be allowed the executor for the reasonable expenses of the action—that is, for the services and time of the attorneys—unless the proof of the nature and amount of the services shows that this is a reasonable and proper amount to be allowed by the surrogate. In view of the amendment of 1911, providing that the surrogate has power to fix the reasonable amount of the expenses, the agreement of the executor with the attorneys who instituted and prosecuted the action ought not, I think, to control the surrogate, if, in his judgment, such amount is unreasonable. The executor cannot, I think, in law make an agreement for unreasonable compensation payable out of damages so as to bind the fund in court. The fact that the fee is contingent makes no difference. O'Neill v. Crane, 65 App. Div. 358, 72 N. Y. Supp. 812. If he do, is it not a sort of devastavit for which he must respond for all sums in excess of reasonable compensation? But as this question is raised by objections to an account, it seems to me it should be passed on in the usual way. In view of the gravity of the case it will be referred to Hon. Charles F. Brown to hear and determine.

Submit order of reference. After the coming in of the referee's report on the account and objections, the final decree to be entered herein may be settled in the usual manner in conformity with this decision and the orders to be made on the report of the referee.